State v. Newell.

THE STATE v. NEWELL, *Appellant.*

Division Two, June 22, 1897.

1. Constitutional Law: SELLING BUTTERINE. The case of *State v. Bockstruck*, 136 Mo. 335, holding the act of April 19, 1895 (Laws 1895, p. 26), entitled "An act prohibiting the coloring yellow of any substance designed to be used as a substitute for butter," etc., is affirmed and said act again held to be constitutional, without reference to section 11 thereof, which requires the fines collected thereunder to be paid into the State treasury instead of into the school fund, the court holding that the other provisions of said act are in nowise dependent upon that section, and presuming that the guardians of the school fund will take the proper steps for having such fines turned into the school fund.

2. Sales of Butterine: RESIDENCE OF DEFENDANT AGENCY: CONVICTIONS. The evidence showed that defendant, in St. Louis, sent money to Kansas City, Kansas, and purchased butterine of manufacturers there at ten and five-tenths cents per pound and they delivered it, addressed to the purchasers, to him in St. Louis, and he added four and five-tenths cents per pound and then sold and delivered it to the purchasers and presented to them accounts made out in the name of the manufacturers. He testified that he was not the agent of the manufacturers, but of the purchasers. *Held,* that under the facts the actual vendor was not hidden by the transparent gloss of agency with which defendant endeavored to cover himself; that the sale was made in St. Louis, and that a conviction was proper.

*Appeal from St. Louis Court of Criminal Correction.*
HON. DAVID MURPHY, Judge.

AFFIRMED.

*Charles M. Napton* for appellant.

(1) The facts show a "sale" at Kansas City, Kansas, and not in the city of St. Louis. Also that the "sale" was made by Swift & Company, and not by the defendant.

The case of *State v. Wingfield*, 115 Mo. 428, settles the point that in the circumstances the sale is not made in the city of St. Louis. It would make no difference if Newell had been the agent of Swift & Company, which he was not. The rule is stated in that case as follows: "When the goods have been delivered to a common carrier for transportation to the purchaser, the delivery to the common carrier passes title." But a different rule prevails where goods are shipped C. O. D., with no delivery until charges are paid, which was not the case here. *Meyer Bros. v. McMahan*, 50 Mo. App. 18. A question may arise from the evidence as to whether these goods were delivered to the carrier in Kansas City, Kansas, or Kansas City, Missouri, but I take it that in either event the prosecution fails, because if the offense of selling occurred in Kansas City, Missouri, it should be prosecuted there, and if in Kansas City, Kansas, then there is no violation of our State law. *Commonwealth v. Paul*, 20 Phila. Rep. 381; *Leisy v. Hardin*, 135 U. S. 100; *Waterbury v. Newton*, 50 N. J. L. 534; *State v. Newton*, 50 N. J. L. 543.

*Edward C. Crow*, Attorney-General, *Sam B. Jeffries*, Assistant Attorney-General, and *J. D. Johnson* for the State.

(1) The statute in question has by this court been held to be constitutional. *State v. Bockstruck*, 136 Mo. 335. (2) Under the facts of the case, the "but-

terine" in question was sold by Swift & Company, at Kansas City, Kansas, to the defendant, and by the defendant at St. Louis to the prosecuting witnesses. Benjamin on Sales, par. 1; 2 Kent's Com. 468; Anderson's Law Dictionary; *State v. Wingfield*, 115 Mo. 428. (3) The defendant was not the agent of the prosecuting witnesses for purchasing the "butterine" from Swift & Company. Story on Agency, secs. 3, 28 and 33; Anderson's Law Dic., Titles, "Agent," "Broker," "Factor." Mechem on Agency, secs. 13, 927 and 932; 2 Am. and Eng. Ency. of Law, pp. 571, 572 and 578; *Portland v. O'Neil*, 1 Org. 218. (4) Whether or not the "butterine" was sold by defendant was an issue of fact in the case, which was found against the defendant, and there is evidence to sustain the finding.

GANTT, P. J.—This is a prosecution instituted against the defendant in the St. Louis Court of Criminal Correction for a violation of the act entitled "An act prohibiting the coloring yellow of any substance designed to be used as a substitute for butter; to prohibit the manufacture, sale, keeping for sale and fraudulent use of substances designed as imitation butter; to regulate the manufacture, sale and keeping for sale of any substance designed to be used as a substitute for butter, and making an appropriation for carrying out the provisions of this act." Approved April 19, 1895. Laws of Mo. 1895, p. 26.

The information charges "that E. S. Newell, in the city of St. Louis, on the twelfth day of August, 1895, did unlawfully sell, keep for sale and offer for sale, a certain imitation of butter, to wit, a substance which was then and there composed and compounded of animal fat, vegetable oil and other substances combined with butter and combined with animal fat and

other substances which are to the informer unknown, for the purpose and with the effect of imparting thereto a yellow color and shade of yellow, so that the same then and there resembled and was in imitation of genuine yellow butter, contrary, etc." A jury was waived and the case was tried by the court. The defendant was found guilty and his punishment assessed at a fine of $50.

Defendant assigns as a ground of his motion to quash the information below, that "the law under which the information is drawn is unconstitutional and void, and the penalties in such law are unconstitutional and void;" also, in his motion for a new trial that "the court should have sustained the motion to quash the information," that "the information charges no offense, and the statute under which it is drawn is unconstitutional and void, and the penalty imposed upon defendant is contrary to the Constitution and laws of this State;" also, in his motion in arrest, that "the law under which the information is drawn is void, is contrary to the Constitution of this State, and is in violation of section 8, article 11 of the Constitution."

These are the only allusions in the record to the Constitution, and raise the constitutional question involved in the appeal.

The point upon which defendant relies for reversal of the judgment is that *the sale of the imitation butter* charged in the information *was made at Kansas City, Kansas,* and *not* at the city of St. Louis, and was by the firm of Swift & Company instead of by the defendant.

The facts are these: David May, agent of the State Board of Agriculture for the enforcement of the law in question, gave to defendant an order, at the city of St. Louis, for ten pounds of the imitation butter, called in the trade "butterine," to be delivered at No. 2806 Locust

street, that city, where Mr. May boarded. The defendant informed him at the time that he would have to send the order to Swift & Company, manufacturers of the article at Kansas City, Kansas, but stated that if Mr. May was in a hurry he would let him have one of three tubs which he then had at his house for his own use. Mr. May left money at No. 2806 Locust street with Mrs. Beggs, the landlady, to pay the defendant for the quantity ordered when delivered. After receiving the order from Mr. May, the defendant called on Mrs. Beggs and told her he had been sent there, and asked if she wanted some "butterine." She told him she wanted not more than ten pounds. He informed her that it was not butter, but it was made of pure animal fat, etc.; was sold by Swift & Company, and that he, the defendant, just delivered it; that he would send the order to that firm or to Kansas City, Kansas. Shortly after this defendant delivered to Mrs. Beggs a ten-pound tub of "butterine," and she then paid him for the same with the money, or its equivalent, furnished by Mr. May. The evidence is to the effect that the defendant was, at that time, engaged in soliciting orders from persons generally for "butterine," lard, hams, etc., and placing them with Swift & Company. All such orders from defendant for "butterine" Swift & Company filled for him at the then St. Louis market price, and the money for the same was paid to the firm by defendant. The goods called for in each order were by Swift & Company marked with the name or initials of the person ordering the same, and consigned or waybilled to the defendant. By having a number of orders thus filled at the same time, the defendant got freight rates from Kansas City to St. Louis at less than half a cent per pound, while the freight on single small orders would have been about four and one half cents per pound. Defendant also had his own teams

with which he made deliveries in St. Louis to persons purchasing the "butterine," etc.

Although Swift & Company filled all orders from defendant for the articles at the then St. Louis market price and billed them to him in the manner mentioned, they, under an arrangement with the defendant, made out an account or statement for each order to the person giving the same at an advanced price, sufficient to cover the market price of the article; that is, the price at which they sold to defendant, the freight to St. Louis at the greater rate mentioned, and one cent per pound for wagon delivery by defendant. Neither Swift & Company nor the purchaser paid defendant commissions in connection with the transaction; but the arrangement secured to the defendant a profit of about five cents per pound for all "butterine" handled by him, and was his only compensation in the transactions, a fact which he concealed from the persons giving him orders for the article. This course was pursued in the sale to Mr. May and Mrs. Beggs. Defendant paid Swift & Company but ten and a half cents per pound for the article sold to the prosecuting witnesses, while he charged and received from them fifteen cents per pound, and collected the same after the package was delivered.

The defendant admitted in his testimony that he had the right to place any of the orders received by him with other manufacturers than Swift & Company, and claimed at the trial that he did not act as the agent of that firm in making sales, but as the agent of the purchaser.

No instructions were asked or given at the trial, and no exceptions to the evidence were made or saved.

I.    The same constitutional question is made in this case that was urged in *State v. Bockstruck*, 136 Mo. 335; 38 S. W. Rep. 317. As was said in that case, the

act was valid without reference to section 11 thereof, and its other provisions were in no sense so dependent upon that section that the whole act must fail because the fines imposed thereby were directed to be paid into the State treasury instead of the school fund. If the act is otherwise complete and constitutional, as we have already held it is, it is to be presumed that the guardians of the school fund will take the proper steps to see that it shall be deposited therein instead of in the State treasury. That controversy can only be adjusted after defendant has been convicted and paid over his fine to the executive officer of the St. Louis Court of Criminal Correction. The constitutional command in section 8, article 11, presents no obstacle at this stage of the prosecution. 1 Bishop's New Crim. Law, sec. 932, and cases cited.

II. As will appear from the statement, no instructions or declarations of law were asked or refused and no exceptions saved as to evidence received or excluded. A question of fact only was submitted: Was the sale made in Kansas City, Kansas, or in St. Louis, Missouri? If the butterine was sold in St. Louis, it was conceded the defendant was guilty if the law was constitutional. According to defendant's own evidence he was not the agent of Swift & Company, and it is very plain he was not the agent of May or Mrs. Beggs. Courts and juries are not so obtuse that they can not discern the true character of transactions like this. The actual vendor is not hidden by the transparent gloss of agency with which defendant vainly endeavors to cover himself. The plain common sense of the transaction was that defendant in St. Louis sent money to Kansas City, Kansas, and purchased the butterine of Swift & Company at ten and one half cents per pound and they delivered it to him in St. Louis and he added four and one half cents a pound and then

sold and delivered it to May in St. Louis. No prop-·erty right was vested in Mrs. Beggs by the mere mark-ing of the package with her name. Notwithstanding these marks defendant was the consignee. *State v. Wingfield*, 115 Mo. 428. Swift & Company did not know her in the transaction nor did she know them. She bought of defendant.

The court having found the fact against defendant and abundant evidence appearing to sustain that find-ing, the judgment of the trial court is conclusive on this court. Judgment affirmed. SHERWOOD and BUR-GESS, JJ., concur.