THE STATE v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

In Banc, December 24, 1913.

1. **LEGISLATIVE POWER: Limitations.** The power of the General Assembly to enact laws is subject in all matters to the limitations of the Constitution, whether they be expressed by prohibitory clauses or by affirmative provisions relating to the subject-matter. No attempted enactment which contravenes either limitation is valid.

2. **FINES: To Go Into Road Fund: How Far Unconstitutional.** So much of Sec. 3158, R. S. 1909, requiring a railroad company to receive and ship grain and other freight consigned to its care for transportation, as attempts to divert the fines and penalties imposed by the act to the good roads fund, is obnoxious to the provision of the Constitution declaring that "the clear proceeds of all penalties and forfeitures shall belong to the county school fund;" and as such attempted diversion of the fines was the sole purpose for the enactment of that part of the act, the clause giving the penalties to the good roads fund is invalid, and the fines imposed by it cannot be collected for the school fund or for any other fund. That the primary purpose of this clause was to add to the good roads fund the penalties imposed for its violation is manifest from an examination of the words and objects of the clause, and also by tracing the history and development of the section and its various amendments.

*Held,* by LAMM, C. J., concurring, that by the clause creating the penalty the lawmaker has stamped upon the penalty itself his purpose in creating it; he has created the penalty for an expressed unconstitutional purpose, and therefore the clause imposing the penalty is void.

*Held,* by WOODSON, J., that the history and development of the section shows that the clause imposing the fine would never have been enacted had it not been for its words giving the penalty to the good roads fund, and that being in contravention of the constitutional provision requiring penalties and forfeitures to go into the school fund, the clause is invalid.

3. ———: ———: **Substituting School Fund for Good Roads Fund.** The court cannot strike out the words "good roads fund" in said act and substitute therefor the words "school fund," when to do so would be to subvert the plain purpose of the lawmakers, for that would amount to judicial legislation. The primary purpose of the act being to create a good roads fund, and the clause manifesting that purpose not being separable from its other purposes, the court must determine the meaning of the clause from the words it uses.

Appeal from Iron Circuit Court.—*Hon. E. M. Dearing, Judge.*

REVERSED.

*Robert T. Railey* and *N. A. Mozley* for appellant.

(1)   The penalty clause of Sec. 3158, R. S. 1909, is invalid, and there being no other provision of law attempting to inflict a penalty for the alleged violation of said section, the present action must fail, as only a penalty is sought to be recovered herein. The Legislature is not bound to provide a penalty in cases of this character, but if it does attempt to do so, it must appear upon its face that said penalty is for the benefit of the school fund, or the matter will stand as though no penalty had been imposed. There is no provision of law in our Constitution, or in our statutes, which authorizes either the jury, the trial court or the appellate tribunal to exercise a legislative function by striking out plain legislative language from a section

and substituting in a highly penal statute language which the Legislature did not use or intend to use. Butts v. Merchants' & Miners' Tr. Co., 33 U. S. Sup. Ct. 966; Railroad v. Guitierrez, 215 U. S. 87; Railroad v. McKendree, 203 U. S. 514; U. S. v. Ju Toy, 198 U. S. 253; James v. Bowman, 190 U. S. 127; Baldwin v. Franks, 120 U. S. 678; Poindexter v. Greenhow, 114 U. S. 80; Trademark Cases, 100 U. S. 82; United States v. Harris, 106 U. S. 629; Allen v. Louisiana, 103 U. S. 80; Trademark Cases, 100 U. S. 82; United States v. Reese, 92 U. S. 214; Karem v. United States, 121 Fed. 250; State v. Bockstruck, 136 Mo. 335; State v. Newell, 140 Mo. 282; State ex rel. v. Warner, 197 Mo. 650; State ex rel. v. Nast, 209 Mo. 708; Cooley on Constitutional Limitations (6 Ed.), 209. (2) Section 3158 was first passed in 1905 (Laws 1905, p. 113), and it neither directly nor inferentially indicates any intention upon the part of our Legislature to penalize the railroads of the State for the benefit of the school fund, or to inflict any penalty at all, unless such penalty should go to the good roads fund. This conclusion is not unreasonable, because the Legislature in all of its former legislation upon the subject in 1872 and 1881 had never penalized the roads at all. Appellant, therefore, insists that, in construing a highly penal section like section 3158, words should not be stricken therefrom and new language, never used nor intended to be used by the Legislature, inserted therein. If the section as enacted by the Legislature is invalid, then the entire penal portion of the section should be declared unconstitutional and void. Butts v. M. & M. Ir. Co., 33 U. S. Sup. Ct. 964; Railroad v. Gutierrez, 215 U. S. 97; Railroad v. McKendree, 203 U. S. 514; Civil Rights Case, 109 U. S. 3; Allen v. Louisiana, 103 U. S. 80; Warren v. Mayor, 2 Gray (Mass.), 84; United States v. Reese, 92 U. S. 215. (3) The elementary rule of law in this State is to the effect that in construing penal statutes, like the one at bar, they

are to be strictly construed as against the State and liberally construed in favor of the defendant.   State ex rel. v. Railroad, 238 Mo. 612; State ex rel. v. Bland, 144 Mo. 534; State ex rel. v. Smith, 114 Mo. 180; State v. McCance, 110 Mo. 398; Connell v. Tel. Co., 108 Mo. 49; Rozelle v. Harmon, 103 Mo. 339; State v. Bryant, 90 Mo. 537; Manz v. Railroad, 87 Mo. 278; State to use v. Railroad, 83 Mo. 144; Fusz v. Spaunhorst, 67 Mo. 256; Kritzer v. Wilson, 19 Mo. 327; Riddick v. Governor, 1 Mo. 147; State ex rel. v. Railroad, 105 Mo. App. 211.   (4)   The court, by judicial legislation, has no right arbitrarily to strike from said section the language used by the Legislature, in which it is said that for a violation of the section "the railway company shall forfeit and pay to the good roads fund of this State the sum of ten dollars for each day they shall so fail," or any part thereof.   In other words, the language above quoted, having been used by the Legislature in the amendment of 1905, cannot be changed so as to read into said section a civil right of action for the benefit of the school fund, when there is nothing in any portion of the section which would warrant such a construction.   State v. Bockstruck, 136 Mo. 335; Cooley on Const. Lim. (6 Ed.), 209.

*Gardiner Lathrop, T. R. Morrow, W. F. Evans, Sam H. West, F. C. Dillard, Joseph M. Bryson, J. L. Minnis, S. W. Moore, Scarritt & Scarritt* and *O. M. Spencer* for *amici curiae.*

*John T. Barker,* Attorney-General, and *William M. Fitch,* Assistant Attorney-General, for the State.

(1)   Appellant is in error when it contends that where a portion of a statute is unconstitutional the whole statute must fall.   1 Lewis's Sutherland's Statutory Construction, sec. 296; State v. Newell, 140 Mo. 287.   If we eliminate the words "the good roads fund of" from the penalty clause of said section 3158, then

we have left a full and complete enactment. It covers every intention of the Legislature. It is left then in the same condition in which practically every statute of criminal law which provides a penalty is in. In fact, the great body of criminal law, as administered under the Constitution of this State, is silent as to where the particular fine, forfeiture or penalty shall go. By adding those words no force or strength is added to the statute. Such words, if added, must be in harmony with the Constitution. If not in harmony with the Constitution, such words will be ignored, or treated as surplusage, and the law will stand as though such words had been omitted. Every presumption is indulged in favor of the validity of the act. State v. Douglass, 50 Mo. 597; State v. Thompson, 144 Mo. 314; State ex rel. v. Aloe, 152 Mo. 477; In re Bledsoe Hill, 200 Mo. 646; State ex rel. v. McIntosh, 205 Mo. 602. (2) The forfeiture clause of Sec. 3158, R. S. 1909, is constitutional and valid and should be enforced in this case. Railroad v. State, 79 Tex. 264; State ex rel. v. Railroad, 83 Mo. 144; State ex rel. v. Railroad, 32 Fed. 722; Railroad v. Com., 85 Kan. 229. (3) Appellant contends that by reason of the fact that the statute provides that ultimate beneficiary of the forfeiture, which is declared by the act, shall go "to the good roads fund" instead of to the public school fund as named in the Constitution, the whole act, so far as the imposition and the collection of the forfeiture are concerned, is void. This by no means follows as a logical sequence. The Legislature in the amendment of 1905 had three separate and distinct objects in view: (a) The imposition of a duty upon railroad companies toward cities of the class named in the section; (b) the imposition of a penalty for failure to discharge the imposed duty, and (c) the method for collecting and enforcing that penalty. To these may be added a fourth provision which the Legislature incidentally provided by saying that the

money should go to the good roads fund instead of giving it to the public school fund. By admitting that the fourth provision is unconstitutional and invalid and cannot be enforced for the benefit of the good roads fund, we do not destroy the other three main objects sought to be accomplished by this section. Railroad v. State, 55 Ark. 200; Harrod v. Latham, 77 Kan. 466. When we admit that the statute imposes a duty —that that duty has been violated by the railway company—and the statute prescribes a remedy for collecting the forfeiture given by the statute for such violation, we cannot relieve the railroad company from all liability in the case simply because the ultimate beneficiary of this fund is given by the statute to a place contrary to the constitutional provisions. This is especially true when the suit is not brought individually by such beneficiary. In good conscience the railroad company should not be permitted to willfully and flagrantly violate the plain mandatory terms of the statute and then come into this court and excuse itself by reason of the fact that the money which it owes the public is not correctly disposed of by the statute. The debt is due the public by reason of the railroad company's failing and refusing to comply with the requirements of law. Then why should the public be deprived of this money, and why should the railroad company be excused from all liability for its violations? As said in the Kansas case: "This statute provides proper means for collecting the penalties. It then provides for a disposition of such penalties contrary to the constitutional mandate. This provision being invalid, the fund will be disposed of as the Constitution directs. This disposition in no manner violates the legislative intent, nor does it impair the efficacy of the law." The doctrine of these cases has been recognized by this court in the case of State v. Newell, 140 Mo. 288.

## STATEMENT.

This is a suit by the State to recover ten dollars per day for the alleged violation by defendant of the provisions of section 3158 of the Revised Statutes of 1909, for a period of 110 days. The answer was a general denial and that said statute was unconstitutional as a whole and particularly as to its concluding paragraph which is set forth in italic type in the following quotation of the statute.

"Sec. 3158. *To deliver and receive freight at crossing of other roads—to maintain switches—penalty for failure.*—Every railroad corporation organized or doing business under the laws of this State, or authority thereof, shall receive and deliver all grain and other freight consigned to its care for transportation at the crossings and junctions of all other railroads, canals and navigable rivers; and shall at all cities and towns along the line of their railroad having a population of two hundred inhabitants or more, construct and maintain switches and freight houses for the receipt and delivery of grain and other freight that may be tendered such railroad corporation for transportation; and shall stop at least one train daily thereat to receive and unload freight. And whenever in the opinion of the Railroad and Warehouse Commissioners the amount of business is sufficient to justify the same, such railroad corporation shall retain a freight agent for the purpose of receiving and delivery of grain and other freight. *Any railroad corporation failing or refusing to comply with the provisions of this section after thirty days' notice given shall forfeit and pay to the good roads fund of this State the sum of ten dollars for each day they shall so fail or refuse to comply with the provisions of this section, to be recovered in any court of competent jurisdiction by civil action brought in the name of the State by the prosecuting attorney of the*

*county wherein such failure or refusal occurs.*  [R.
S. 1899, sec. 1118; amended, Laws 1905, p. 113.]''

The last paragraph of this statute was enacted
in 1905.  [Laws 1905, p. 113.]  The preceding portions
were enacted respectively in 1872 (Laws 1871-2, pp.
73-4) and in 1881 (Laws 1881, pp. 77-8).  When first
enacted it provided, first, for a private suit by an in-
jured party for damages caused by disobedience to its
commands, and, secondly, for a second violation of its
provisions, a public fine of $1000 was imposed; third,
for repeated violations of the statute it authorized
proceedings for a receivership.  These penalties con-
tinued for a few years, when they were repealed (1881)
and in lieu of them the Legislature gave the owners of
the freight a right to sue for damages occasioned by
violations of the act as then amended.  The act con-
tinued in that state until finally amended (1905) when
the shipper's right of action was taken away, and in
lieu thereof the italicized portion of above act was
added.

On the trial there was evidence tending to prove
the charges made in the petition that defendant had
not complied with the provisions of the statute under
conditions calling for its application, for the period
mentioned, and plaintiff recovered judgment for $1100
from which defendant duly appealed.

## OPINION.

### I.

BOND, J. (After stating the facts as above).—In
considering this case we shall confine our views to the
claim that the penalty clause of the statute supra is
void under the provisions of the Constitution giving
the proceeds of fines to the school fund of the respect-
ive counties, since that question goes to the root of the
right to recover in this action, which is only a suit for
the penalty provided by the statute.

The power of the General Assembly to enact laws is subject in all matters to the limitations **Power of Legislature.** of the Constitution of this State, whether they be expressed by prohibitory clauses, or by affirmative provisions relating to the matter in hand. Both methods of restriction are equally binding on the lawmaking power and no valid law can be enacted by it which contravenes either. [Redmond v. Railroad, 225 Mo. 1. c. 731.]

In this case the constitutional restraint upon the Legislature is in the form of an affirmative provision of the organic law that "the clear proceeds of all penalties and forfeitures  .  .  .  shall belong to  .  .  . the county public school fund." [Constitution, art. 11, sec. 8.]

Unquestionably the attempted diversion of any such penalties or forfeitures by the Legislature would nullify the act, if it was passed for **Penalties: Diversion:** that sole purpose, for the Constitution **Unconstitutional Statute.** having spoken as to the proper receptacle of such funds, the power of the Legislature to speak in a contrary way is stilled and ceases to exist until the constitutional provision shall be amended or abrogated. It is evident that so much of the penalty clause of the act under review as purports to create a penalty payable to the good roads fund is void.

But does this conclusion invalidate the penalty clause so that a different beneficiary to the one specifically designated by the Legislature may not claim thereunder, upon the theory that it was the intention of the Legislature to create a penalty in favor of such other beneficiary though not mentioned in the act?

The test in such case is whether, considering the *words* and *objects* of the law or section thereof containing the unconstitutional provision, we would be warranted in holding that it would have been enacted

in the changed form if the unconstitutionality of its present state was known at the time.

In the present case, the penalty clause under review is void on its face in so far as it purports to create a penalty or forfeiture payable to the good roads fund.

With that in mind, we have searched the language of the penalty clause added by the amendment of 1905, and we fail to discover any basis in its terms or purposes, which could support a legal intendment that it was enacted for any other object than the creation of a debt enforceable on behalf of the good roads fund. That purpose is explicitly stated in the Laws of 1905, p. 113, and no other purpose is indicated by any of the language employed in said amendment than the single and indivisible one of creating a specific debt for the benefit of the good roads fund which the amendment sought to accomplish by striking out the provision which the former act contained, affording a right of private action to the shipper of goods and substituting therefor a specific and fixed sum to be *"forfeited* and *paid"* to the good roads fund, and recoverable by a civil action. It will be observed that the session act does not say that the disobedient carrier shall pay a fine, and *thereafter* provide such fine shall inure to the good roads fund, nor does it contain a word from which a rational inference can be drawn that it was the legislative motive *first* to create a fine, and then to indicate its recipient. Had that form of phraseology been used, some ground might exist for the contention that the act was *primarily* designed to create a penalty or forfeiture, and secondarily to give the benefit of it to the good roads fund, in which event we would sustain so much of it as fixed the penalty. This was ruled in State v. Bockstruck, 136 Mo. l. c. 340, 359, where section 7 then held in judgment prescribed a fine, and section 11 later provided a disposition of it

into the State Treasury, and where the latter section was held to be void without affecting the validity of the former. To the same effect was the ruling made in State v. Newell, 140 Mo. 282. But there is no such divisibility in the language before us, which is direct and preclusive, to-wit: " . . . *shall forfeit and pay to the good roads funds of this State*" the sum of $10 for each day of noncompliance. These words simply create a specific fund for a single purpose in a single section or paragraph which cannot be separated without affecting the sense, meaning and object had in mind by the Legislature when they were selected. As they stand, they do not imply that the fund thus created was intended primarily for the unnamed school fund and not for the named good roads fund. The Legislature no more had in mind the school fund than it did any other beneficiary of the various kinds who are the objects of the bounty of the State, or who comprise its eleemosynary institutions. Had they thought of the public schools as the constitutional donee of fines and penalties they would not have enacted a law, which they must have known would be a simple nullity; for we are not permitted to ascribe the absurd motive to them of intentionally violating the Constitution of the State or knowingly enacting a nugatory law. These considerations convince us that there was no thought or purpose on the part of the lawmakers when they enacted the penalty clause, that it should be given to some other than the particular beneficiary named by them, and satisfy us that but for creating or raising money for the good roads fund the penalty clause of 1905 would never have been adopted.

## II.

In the able brief of the learned counsel for the State it is said, in effect, that the previous history of

the main act to which the penalty clause was attached
in 1905 indicates that the Legislature then in-
tended to make the main act more effective
by imposing a fine enforceable by the direct
action of the State and which when collected should
be disposed of according to the Constitution.

A review of the history of the act does not im-
press us with the logic of this suggestion. When the
act was originally passed it was expressed as section
six of the Laws of 1872, pp. 73-4, and provided in sub-
stance that railroad corporations should receive and
deliver grain at the crossings and junctions of all
other railroads, canals and navigable rivers. [R. S.
1879, sec. 817.] The secondary public fine for the vio-
lation of the original act was abrogated in the revision
of 1879, leaving only a right of private action for dam-
ages to the consignee or person entitled to the control
of such property. The next amendment was in 1881.
(R. S. 1889, sec. 2622), and required the additional
duty of constructing switches and freight houses at.
towns containing two hundred inhabitants and stop-
ping one train a day there to receive and unload
freight, and the only penalty attached to the violation
of this amendment was a right of action given to the
consignee or person entitled to the control of the prop-
erty. [R. S. 1889, secs. 2622, 2618.] The main act was
finally amended in 1905 and is now complete as section
3158 set out in the foregoing statement. From the pas-
sage of the original act, and during all of its transmu-
tations until its present form, no public penalty for its
enforcement has existed later than 1879, although during
ing the whole period of its existence a primary pro-
vision for its enforcement by a private suit has been
continued. The secondary penalty imposed in favor
of the public was abolished by the provisions of 1879
and has never reappeared until the amendment of
1905, if such a construction can be given to that amend-

<em>History of Act.</em>

ment. This cannot be done on any theory harmonizing with the prior trend of legislative thought, as that has been shown by the action taken at the various stages of the evolution of the entire act in its present form, for the short-lived secondary purpose of affording the public revenue from the act disappeared upon its first amendment, and the subsequent amendments simply afforded a right of private recovery by private individuals by civil action, which was finally changed so as to give the benefit of a civil action to the good roads fund. If the Legislature felt any duty in 1905 to make more effective provisions for the enforcement of the act, as suggested by the learned counsel for the State, by turning its penalties and forfeitures over to the State, they certainly did not manifest that motive during the anterior history of the act. And that they did not in fact carry out such purpose in 1905, is apparent from a simple inspection of the final amendment then put to the act. We conclude that there is nothing in the development of the present act from prior acts, which justifies the assumption that when the finishing touch was given to it, the Legislature entertained any unexpressed purpose to create the penalty then provided for the benefit of the school fund.

On the contrary we think the Legislature meant exactly what it said, when it undertook to bestow the penalties and forfeitures of this act to the good roads fund. The creation of such a fund was then and is now a matter of proper concern and keen interest to the people of this State and necessarily appealed to their representatives when engaged in the task of bettering the laws of the State. That the urgency of this appeal was felt is shown by the abolition for that purpose of the prior statutory right of action to the owner of the property.

## III.

The learned counsel for the State argues that if the sentence of the penalty clause be dismembered by erasing the name of the payee of the penalty, a valid act would spring into existence, because the effect of the constitutional provision would be to interpolate "school funds" for the erasure of the legislative beneficiary. But would this be any the less an interpolation of a different payee, than if the former name was stricken out and the new name written in. We do not understand that it is pretended that a sentence which completely expresses the thought of its author, can be physically spoliated so as to express a contrary idea and still continue to bear the meaning which it carried before. There is no rule of construction which would tolerate such an abnormality. So in this case the learned counsel would hardly contend if there were no general constitutional provisions whereby all fines go to the school fund, that the legislative purpose to give this fine to the school fund could be arrived at by striking out the words "good roads" and substituting the words "school fund." For that would be a bold and palpable act of judicial legislation by interpolating words destructive of the plain purpose of the lawmakers. Certainly the effect would be the same if the same thing is accomplished by erasure and the supplial of other words, as the legal effect of a fortuitous provision of the Constitution that all fines shall go to the "school fund." The legislative intent is no less thwarted in the one case than the other, the only difference being that in the one instance the new words would be actually inserted in the act, while in the other they would be automatically read into the act perforce the Constitution, in a way just as antipodal to the expressed intention of the Legislature as if the words "school fund" had been written into the act after the erasure

*Striking Out Words of Statute.*

of the designated payee. For this reason we are unable to concur in the argument of the learned counsel for the State that it is permissible in order to sustain the constitutionality of the paragraphs in question, that the sentence expressing the purpose and notice of the Legislature, should be so altered by erasure and legal substitution of words, as to give a meaning essentially different from that entertained and expressed by the framers of the language.

## IV.

Neither do we think the persuasive authorities cited in the latest brief for the State, Railroad v. State, 55 Ark. l. c. 207-8; Harrod v. Latham, 77 Kan. l. c. 469, are in point. In the Arkansas case the fine was divided, part of it being given to an informer, an improper destination under the Constitution of that State. The act was held constitutional because its words showed the intention to create a fine additional to that portion which it gave to the informer, and the court could well hold, as it did, that the *primary* purpose of the Legislature to create a fine would justify sustaining the law on that ground and that this general intent could be effected by applying the *part* of the fine improperly allowed to the same purpose which the other part of the fine would go under the laws of Arkansas. The Kansas case was like the Arkansas except that the fines imposed by one section of the Kansas act were in another section divided between the county and the informer. It was correctly held in that case that the later section only, being separable and independent of the former, was unconstitutional. In the case at bar the pith of the amendment of 1905 is expressed in *one* paragraph or section and in *one* sentence, and for the reasons stated it does not fall within the purview of any of the authorities cited in the brief of the State.

*Cases from Other States.*

The act in question shows on its face that the creating of the fine of ten dollars a day was interdependent upon its payment to the good roads fund. Under the settled law this part of the act cannot remain valid if that payee is substituted by another. [Simpson v. Iron Works Co., 249 Mo. 1. c. 391; State ex rel. v. Gordon, 236 Mo. 1. c. 170.] We therefore hold that so much of. the section of the present statute now under review as is contained in the words copied in italic type in the foregoing statement is in contravention of the Constitution and void.

This conclusion goes no further than stated, and does not affect the remainder of the act as it now stands nor the right to compel obedience to its requirements by proper procedure, but the judgment rendered in this case, for the amount fixed in the unconstitutional penalty clause added to the act in 1905, is reversed.

*Graves, Walker* and *Faris, JJ.,* concur; *Lamm, C. J.,* and *Woodson, J.,* concur in separate opinions. *Brown, J.,* dissents.

## CONCURRING OPINION.

LAMM, C. J.—That the law necessarily involves the idea of *punishment,* and to that end employs language (the word "forfeit") appropriate only to a *penalty,* that the penalty is directed to the punishment of a public wrong as contradistinguished

**Purpose of Statutory Penalty.** from a private wrong (State ex rel. v. Warner, 197 Mo. 1. c. 664), I think, is clear.

·That the *"clear proceeds"* of such penalty belong to the public school funds and that no such penalty can be created payable to any other object or to any person without violating the Constitution, is also clear. [Sec. 8, art. 11, Constitution; State v. Clifford, 124 Mo. 492; State ex rel. Clay County v. Railroad. 89 Mo. 562; State ex rel. v. Warner, 197 Mo. 650.]

We have also ruled that where the penalty is created, as by way of fine on conviction of misdemeanor, or otherwise, then, the mere fact that the lawmaker later, in some separable and other provision of his act, directs that it shall be diverted from its constitutional object or destination does not destroy the law altogether or the penalty or the misdemeanor and fine. They stand. The diversion, only, is struck down. [State v. Bockstruck, 136 Mo. 335; State v. Newell, 140 Mo. 282; State ex rel. v. Warner, 197 Mo. 650.]

But in none of those cases was the language of the statute held in judgment the same as the language used in the statute in judgment in the instant case. In none of them did the lawmaker stamp upon the very penalty itself his purpose in creating it. He did not create it for an expressed purpose and write that purpose into the very language whereby he created the penalty so as to be part and parcel of it, and then make that purpose an unconstitutional one as here.

I have labored in my own mind to sustain the law, but am constrained to think it an unconstitutional exercise of the lawmaking power in the particular considered by my brother. It is much the same as if the lawmaker had said to the recalcitrant railroad: If you will not obey the law and provide shipping facilities by rail, then by way of penalty you shall pay for building public roads whereby facilities for hauling may be encompassed. It thereby becomes a novelty, an experiment outside the Constitution and in spite of it. Indeed if an avowed unconstitutional purpose can ever make a law unconstitutional this law must fall.

I vote to concur.

## SEPARATE OPINION.

WOODSON, J.—There can be no question but what that clause of the section of the statute under

consideration, providing that the penalties and forfeitures prescribed for therein shall go to and **Penalty Sole Purpose.** be paid into "the good roads fund of this State," is clearly violative of section 8 of article 11 of the Constitution, which provides that they shall go to and be paid into and belong to the school funds of the State.

This seems to be conceded by counsel for both parties; but their parting of ways seems to turn upon the question as to whether or not the Legislature would have enacted the statute as it now exists, had it not been for the clause giving the penalties to the road fund.

In my opinion, that question should be answered in the negative, and my reasons for so stating are, that the penalties prescribed by the Acts of 1872 and 1881, which constitute two of the three elements which make up the Act of 1905, were apparently sufficient to guarantee their obedience by the railroads of the country; that is, the penalties therein prescribed were in proportion to and in keeping with those imposed by the Legislature for the violation of kindred statutes governing no more serious offenses.

Moreover, the courts of the State cannot conscientiously close their eyes to the history and trend of legislation in this State, and in this country for that matter, which discloses an ardent desire on the part of the lawmaking power to strain every point in favor of procuring funds for the construction, maintenance and improvement of public highways throughout the State and of the United States; and in my opinion the amendment of 1905 would never have been enacted had it not been for the insertion of the objectionable clause previously mentioned.

I am, therefore, of the opinion that the judgment of the circuit court was erroneous, and that same should be reversed with directions to enter judgment for the defendant.