## DAVIDSON et al. v. GUARANTEE LIFE INS. CO. et al. (No. 7789.)

(Court of Civil Appeals of Texas. Galveston. Jan. 9, 1920. Dissenting Opinion Jan. 28, 1920. Rehearing Denied Jan. 29, 1920.)

**1. Pleading ⚖══214(1) — Petition considered true on general demurrer.**

On general demurrer to petition, the averments must be considered as true.

**2. Evidence ⚖══442(1)—Parol agreement, requiring payee to refund upon payment prior to expiration of term, held admissible.**

Where note and deed of trust made no provision concerning sale of land in its entirety, or the payment of the note before the expiration of the five-year term, parol testimony was admissible to prove an agreement whereby a portion of the principal represented interest at a certain per cent. for the five-year period, and that upon payment thereof before expiration of such period payee would refund the amount of such interest that had not been exhausted, such testimony being within the exception to the rule against receiving contemporaneous parol agreements, where the evidence is consistent with the writing, and where it is apparent that the instrument was not intended as the complete embodiment of the undertaking.

Pleasants, C. J., dissenting.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by J. W. Davidson and another against the Guarantee Life Insurance Company and another. General demurrer to petition sustained, and plaintiffs appeal. Reversed and remanded.

Ryan & Matlock and Ben H. Kelly, both of San Antonio, and Cooper & Merrill, of Houston, for appellants.

Searcy & Botts, of Brenham, and Hutcheson, Bryan & Dyess, of Houston, for appellees.

GRAVES, J. In this cause a general demurrer was sustained by the trial court to the cause of action declared upon, and a challenge of the correctness of that action is, in effect, the only question presented on appeal. Due to the fact that the plaintiffs below did not sooner disclose the oral character of the agreement they sued upon, this ruling was not made until after the evidence had first been gone into and they had been permitted by trial amendment to their pleadings to so allege, but since it finally was, and the case disposed of in that manner, the

---

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 34 Sup. Ct. 229.

stage of the hearing at which that action was taken becomes unimportant; neither is it thought essential that separate statement be made of the contents of their different pleadings, but only that—in testing the sufficiency of their allegations as against the general demurrer—the proper substance and effect of them all be given. That will now be undertaken.

Davidson and Lard sued the two insurance companies, the Guarantee Life of Houston and the Farmers' Life of Denver, in debt for the sum of $5,155.61, alleged to have become due to them from each of the companies as a result of these transactions:

On August 30, 1911, being then the owners of slightly more than 26,000 acres of land in Duval county, Tex., upon which they owed in liens against it the sum of about $81,665.-74, they borrowed from the Guarantee Life $90,000 with which to pay off and discharge these liens, giving it their note for that amount to run for five years, bearing 8 per cent. interest per annum from date, and secured by a deed of trust in the company's favor upon the land, it being at the time agreed between the parties that the insurance company should use the $90,000 so borrowed from it in discharging the $81,665.74 in liens against the land, in paying a $5,000 brokerage fee to itself for making the loan, and such other properly chargeable sums against the borrowers as might be necessary to free the land of all incumbrances, any left-over surplus to be paid to them.

Subsequently, on April 25, 1912, at the special instance, request, and solely for the accommodation of the Guarantee Life, to enable it to make its surplus account show $6,925 more in assets, Davidson and Lard signed and delivered to it—in lieu of the former $90,000, one at 8 per cent. interest— a new note for $96,925, dated back to September 1, 1911, to run five years from that date at 6 per cent. interest per annum, at the same time also executing and delivering to Lee C. Ayars, trustee for the insurance company, a deed of trust upon the land to secure its payment. Then follow these averments:

"VII. Plaintiffs allege that the sum of $6,925 was added to the face of said substituted note, which represented the amount necessary to be added to the $90,000 note in order to cover the difference between the interest at the rate of 8 per cent. and 6 per cent. per annum on $90,000 for the full term of five years, and plaintiffs allege that it was fully agreed and understood by and between plaintiffs and said defendant Guarantee Life Insurance Company, acting by and through its duly authorized agents and representatives, at the time of the delivery of said note for $96,925, as aforesaid; that if said land was sold by plaintiffs, or said note paid prior to the maturity thereof, the said defendant Guarantee Life Insurance Company would account to the plaintiffs for whatever amount of said sum of $6,925, which was added

to the face of said note, as aforesaid, as interest, that had not been exhausted in the payment of the $90,000, at the rate of 8 per cent. per annum from September 1, 1911, to the date of such sale of said land or payment of said note.

"VIII. Plaintiffs further say that on the 11th day of December, 1912, they sold said 26,119.26 acres of land, situated in Duval county, Tex., known as the Gray ranch, to the Continental Trust Company, a corporation having its principal office at Houston, Tex., and on said date conveyed the same to Lee C. Ayars, trustee, with the full knowledge and consent of the defendant Guarantee Life Insurance Company, the said Lee C. Ayars, as trustee, assuming the payment of said $96,925 note, executed by plaintiffs, as aforesaid, the interest on said note having at that date been fully paid by plaintiffs up to and including September 1, 1912, and as such trustee executed and delivered to plaintiffs his certain promissory note for the sum of $110,575.75, due and payable two years after date, with interest thereon at the rate of 6 per cent., per annum, which said note was then and there sold, transferred, and assigned by plaintiffs to the said Continental Trust Company, without recourse, in exchange for 5,529 shares of the capital stock of the said Continental Trust Company, at the rate of $20 per share; that when plaintiffs made said sale of said land to the Continental Trust Company and conveyed the same to the said Lee C. Ayars, trustee, on the 11th day of December, 1912, as aforesaid, 15 months and 10 days of the five years for which said $90,000 loan made by the defendant Guarantee Life Insurance Company was to run had expired, and at that date the sum of $1,769.30 of the $6,925 which was added to the face of the new note for $96,925, as aforesaid, had been consumed in the payment of interest at the rate of 8 per cent. per annum on said $90,000 loan, leaving a balance due plaintiffs of $5,155.61."

Before actually conveying the land to the Continental Trust Company under this sale of December 11, 1912, however, and as a condition precedent thereto, it was further mutually agreed between that company, the Guarantee Life, and Davidson and Lard that the trust company would then assume and at its maturity pay the $96,925 note, and that the insurance company would from the date of this assumption thereof relieve the makers of any further liability or responsibility on the note, and within a week or two would pay them the $5,155.61 rebate due therefrom. The verbal nature of the agreement from which the debt claimed was said to have resulted was thus alleged in the final paragraph of the trial amendment above referred to:

"The note for $96,925 and the deed of trust securing the same was not intended by the parties thereto to be the entire contract or the written evidence of the entire agreement between the parties, but were only intended as evidence of the indebtedness and its security. The obligation assumed by the defendant Guarantee Life Insurance Company to account to plaintiffs for whatever amount of the said $6,925

that had not been exhausted in the payment of the interest at the rate of 8 per cent. per annum on the $90,000 actually loaned to the plaintiff, as aforesaid, which was the basis for plaintiff's cause of action, was at the suggestion and request of the defendant Guarantee Life Insurance Company intentionally omitted from the writing, and left to rest in parol."

Liability against the other insurance company involved, the Farmers' Life of Denver, Colo., was charged to have arisen by virtue of its later acquirement of the assets and assumption of all of the obligations of the guarantee company, including the one here sued upon.

Did the court below err in holding that no recoverable right was asserted in these pleadings, and in refusing to hear any evidence thereunder? As in the beginning suggested, that is the only issue here. In sustaining the demurrer, the court had before it a copy of the deed of trust given to secure the $96,-925 note (containing within its context a copy of the note), and has likewise placed that instrument before this court by appending a copy of it to the bill of exceptions taken to its action.

[1, 2] It will be noted that the right of action was based alone upon the direct and unequivocal allegation that the land was sold as a whole on December 11, 1912, followed by the further statement that the $96,925 note was then paid so far as the makers, Davidson and Lard, were concerned by the guarantee company's agreement to accept the assumption of it by the trust company as a full payment thereof from them, and to release them from any further responsibility thereon; so that, considering the averments as true under the rule applicable to the effect of a general demurrer, we take it the case in this particular is in effect the same as if, on December 11, 1912, the land in its entirety had been unconditionally sold to a stranger, and Davidson and Lard had paid the note in cash. That being the situation, the question then is, Did they have the right—notwithstanding the time-honored rule against varying, adding to, or contradicting the terms of a written contract by contemporaneous parol agreements—to show that the insurance company verbally agreed with them at the time the note for $96,925 and the deed of trust securing it were executed that, in event the land as a whole were sold, or the note paid, before the five years time had elapsed, it would return to them the unearned portion of the $6,925 that had been on that date so added for its accommodation to the amount they really owed it? The trial court held they did not, and refused to let them prove for what reason and at whose instance the note had been executed, upon the view that it would violate the rule against receiving contemporaneous parol agreements. We think this holding was er-

ror. When the note and deed of trust are looked to, it is found that neither makes any provision concerning or reference to what should happen in either of the two contingencies on which this action was grounded, that is, the selling of the land in its entirety, or the payment of the note, before the expiration of the five years, and consequently the oral agreement declared upon could not be said to vary, add to, or contradict the terms of either instrument, since it related to something they were wholly silent about, and did not therefore trench upon them. Indeed, the note itself recites:

"This note is given by us in lieu of note executed by us August 30, 1911 ($90,000.00) with the understanding that all rights, equities, premises and agreements stipulated in said note of August 30, 1911, are hereby expressly renewed"

—thereby expressly tying the two obligations together and intimating upon the face of the latter one, it seems to us, that it did not evidence the whole of the transaction between the parties touching the matter to which it related. And if these deductions be correct, it is well settled that in such circumstances a contemporaneous parol agreement or understanding may be received. Chapman v. Witherspoon, 192 S. W. 281, and authorities cited in (5) at page 284.

This suit was not brought upon the writings, nor to enforce any of their terms. On the contrary, it was predicated alone upon the positive assertion, which in this court must be taken to be the actual fact, that all those terms had been fully met and complied with as a condition precedent to the accrual of the right here claimed. Therefore the rule prohibiting the admission of parol evidence tending to vary, control, or contradict the terms of a written instrument in a suit founded upon it between the parties or privies thereto has no application. In other words, as we view these pleadings, enough was alleged, whether true or not, to take the situation here presented out of the operation of the general rule referred to and to bring it within the equally well-recognized exception that:

"Evidence of a prior or contemporaneous parol agreement or understanding is frequently received, where it is consistent with the writing in question, and it is apparent that the instrument was not intended as a complete embodiment of the undertaking." 5 Chamberlayne, Mod. Law Ev. 4930, § 3553.

Neither is it thought that what was done here merely amounted to "whipping the devil around the stump" in an attempt by indirection to set at naught an established and salutary rule of law; because there is nothing in the $96,925 note, nor in the trust deed securing it, providing for or making any disposition of their proceeds when—at whatever stage of the time for which they were

to run—realized upon, and consequently nothing to prevent a further mutual agreement or understanding in that event and about that matter between the parties to them, either in writing or by parol, as they might prefer. In other words, such an agreement went beyond the terms of either instrument, presupposed a full payment of the face value of the enlarged note in precise accord with the terms nominated therein, and then divided it between those so contracting in agreed portions. By whatever name or term it be designated, whether as a rebate, the excess over what was justly owing or earned, or what not, the essential effect and result is the same.

While the subject is an interesting one, it is not deemed necessary to further pursue it. The judgment is reversed, and the cause remanded.

Reversed and remanded.

PLEASANTS, C. J. (dissenting). I cannot agree with my Associates in the conclusion that the trial court erred in sustaining the demurrer to the petition. I think it clear that the parol contract upon which plaintiffs based their right of recovery so varies and contradicts the written contract between the parties covering the same subject-matter that it was not legally susceptible of proof.

The note and deed of trust referred to in the petition evidence an unconditional promise to pay the amount specified in the note according to the terms expressed in the instruments, and it is the uniform rule of law wherever the common law is administered that in the absence of fraud or mutual mistake a written obligation cannot be varied or changed by any contemporaneous parol agreement, and all such agreements with reference to the subject-matter of the written contract are conclusively presumed to have been merged into the written instrument. This general rule is so universally recognized and established that the citation of authorities is unnecessary.

Plaintiffs in their amended petition, after stating the fact that they borrowed $90,000 from the appellee Guarantee Life Insurance Company on August 30, 1911, for which sum they executed their note due in five years, with interest at 8 per cent., and to secure the payment thereof executed a deed of trust upon 26,119.26 acres of land in Duval county known as the Gray ranch, thus allege their cause of action:

"IV. Plaintiffs allege that on or about the 25th day of April, 1912, at the special instance and request of the defendant Guarantee Life Insurance Company, its agents and representatives, they executed and delivered to the defendant Guarantee Life Insurance Company a new note for the sum of $96,925, bearing date September 1, 1911, payable to the order of the defendant Guarantee Life Insurance Company on the 1st day of September, 1916, with interest thereon at the rate of 6 per cent. per annum from date, in lieu of said $90,000 note; and to secure the payment of said new note plaintiffs executed and delivered to Lee C. Ayars, trustee, of Houston, Harris county, Tex., a deed of trust upon said 26,119.26 acres of land, which said new note and deed of trust, though executed on or about April 25, 1912, bear date September 1, 1911, and the said defendants, and each of them, are hereby notified to produce said note and deed of trust upon the trial of this cause, or secondary evidence of the same will be offered in evidence by the plaintiffs, and the said defendants are also notified to produce the original $90,000 note, executed by plaintiffs August 30, 1911, to the defendant Guarantee Life Insurance Company, and the deed of trust executed the same day, to secure the payment thereof, upon the trial of this cause, or secondary evidence of the contents thereof will be offered in evidence by plaintiffs.

"V. That said note for $96,925 was executed and delivered by the plaintiffs to the said defendant Guarantee Life Insurance Company at the special instance and request of the said defendant Guarantee Life Insurance Company, its agents and representatives, for its accommodation, and in order that the surplus account of the said Guarantee Life Insurance Company should have the benefit of the difference between 6 per cent. interest and 8 per cent. interest on $90,000 to the date of maturity of said note.

"VI. Plaintiffs allege that the sum of $6,925 was added to the face of said substituted note, which represented the amount necessary to be added to the $90,000 note, in order to cover the difference between the interest at the rate of 8 per cent. and 6 per cent. per annum on $90,000 for the full term of five years; and plaintiffs and said defendant Guarantee Life Insurance Company, acting by and through its duly authorized agents and representatives, at the time of the delivery of said note for $96,925 as aforesaid agreed, that if said land was sold by plaintiffs, or said note paid prior to the maturity thereof, the said defendant Guarantee Life Insurance Company would account to the plaintiffs for whatever amount of said sum of $6,925, which was added to the face of said note, as aforesaid, as interest, that had not been exhausted in the payment of the $90,000, at the rate of 8 per cent. per annum from September 1, 1911, to the date of such sale of said land or payment of said note.

"VII. Plaintiffs further say that on the 11th day of December, 1912, they sold said 26,119.26 acres of land, situated in Duval county, Tex., known as the Gray ranch, to the Continental Trust Company, a corporation having its principal office at Houston, Tex., and on said date conveyed the same to Lee C. Ayars, trustee, with the full knowledge and consent of the defendant Guarantee Life Insurance Company, the said Lee C. Ayars, as trustee, assuming the payment of said $96,925 note, executed by plaintiffs, as aforesaid, the interest on said note having at that date been fully paid by plaintiffs up to and including September 1, 1912, and as such trustee executed and delivered to plaintiffs his certain promissory note for the sum of $110,575.75, due and payable two years after date, with interest thereon at the rate of 6 per cent. per annum, which said note was then and there sold, transferred, and assigned by plaintiffs to the said Continental Trust Company, without recourse, in exchange for 5,529 shares of the capital stock of the said Continental

Trust Company, at the rate of $20 per share; that when plaintiffs made said sale of said land to the Continental Trust Company and conveyed the same to the said Lee C. Ayars, trustee, on the 11th day of December, 1912, as aforesaid, 15 months and 10 days of the five years for which said $90,000 loan made by the defendant Guarantee Life Insurance Company was to run, had expired, and at that date the sum of $1,769.30 of the $6,925 which was added to the face of the new note for $96,925, as aforesaid, had been consumed in the payment of interest at the rate of 8 per cent. per annum on said $90,000 loan, leaving a balance due plaintiffs of $5,155.61, for which said sum the said defendant Guarantee Life Insurance Company, under its said agreement to account to plaintiffs, became liable and promised to pay to plaintiffs the difference between the indebtedness existing against said land on account of the execution of said $96,925 note and the interest thereon at the rate of 6 per cent. per annum, and what would have been plaintiffs' indebtedness against said land on account of the said $90,000 note and interest thereon at the rate of 8 per cent. per annum at the date of the sale of said land on the 11th day of December, 1912, as aforesaid, which said difference at said date the said defendant Guarantee Life Insurance Company became liable and promised to pay to plaintiffs, as aforesaid."

The trial amendment is as follows:

"That when the plaintiffs, on or about the 25th day of April, A. D. 1912, at the special instance and request of the defendant Guarantee Life Insurance Company, its agents and representatives, executed and delivered to the defendant Guarantee Life Insurance Company a new note for the sum of $96,925 bearing date September 1, 1911, with interest thereon at the rate of 6 per cent. per annum, in lieu of the $90,000 note executed by plaintiffs on or about the 30th day of August, A. D. 1911, bearing interest from date at the rate of 8 per cent. per annum, and executed the deed of trust on the 26,119.26 acres of land to secure the said $96,925 note, as set forth in paragraphs IV, V, VI, and VII of plaintiffs' fourth amended original petition filed herein, on the 5th day of June, A. D. 1918, that the sole consideration that induced plaintiffs to execute and deliver said note and deed of trust to the Guarantee Life Insurance Company was the said Guarantee Life Insurance Company, its agents and representatives' agreement and promise to plaintiffs that if said land was sold by plaintiffs, or said notes paid prior to the maturity thereof, the defendant Guarantee Life Insurance Company to account to and refund to plaintiffs whatever amount of the said $6,925 which had been added to the $90,000 actually loaned to plaintiffs that had not been at the time exhausted in the payment of interest on the $90,000 at the rate of 8 per cent, per annum; and that but for said agreement plaintiffs would not have executed said $96,925 note or executed the deed of trust to secure the payment of the same.

"Plaintiffs further say that the note for $96,925 and the deed of trust securing the same was not intended by the parties thereto to be the entire contract or the written evidence of the entire agreement between the parties, but were only intended as evidence of the indebtedness and its security. The obligation assumed by the defendant Guarantee Life Insurance Company to account to plaintiffs for whatever amount of said $6,925 that had not been exhausted in the payment of the interest at the rate of 8 per cent. per annum on the $90,000 actually loaned to the plaintiffs, as aforesaid, which was the basis for plaintiffs' cause of action, was at the suggestion and request of the defendant Guarantee Life Insurance Company, intentionally omitted from the writing and left to rest in parol."

These are all of the allegations of the petition setting out plaintiffs' cause of action.

It appears from these pleadings that plaintiffs executed a note and deed of trust by which they unconditionally obligated themselves to pay the appellee insurance company the sum of $96,925, with interest at 6 per cent., and that they are now seeking to recover from said appellee on a parol agreement, made prior to or contemporaneously with their written obligation, that in event they paid the note or sold the land covered by the deed of trust before maturity of the note they were not to pay the full amount stated in the note and deed of trust.

In the case of Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321, it is held by our Supreme Court that the obligation of a note cannot be changed or varied by a parol agreement made before or at the time of the execution of the note, unless fraud or mistake in the execution of the note is alleged and proven. This case only announces and applies to promissory notes the universal rule as to varying the terms of a written instrument before stated. In a note under the case of Gandy v. Weckerly, 220 Pa. 285, 69 Atl. 858, 18 L. R. A. (N. S.) 434, 123 Am. St. Rep. 691, many of the cases bearing upon this question are cited and discussed, and the editors state that the rule as above stated prevails in all of the states of the United States except in Pennsylvania, where the decisions are conflicting.

It cannot be true that while a parol agreement that a note for a specific amount can be discharged by the payment of a lesser sum cannot be shown in defense of a suit to recover the amount of the note, a parol agreement that when the note is paid the payee will return to the makers a portion of the amount paid can be established and enforced in a suit brought by the maker to recover the amount agreed to be refunded. The substance and effect of the two agreements are the same, and both of them vary and change the written obligation to the same extent. It seems to me that to hold one agreement enforceable and the other not is to trifle with fundamental verities, and to give more regard to form than to substance.

The allegation in the trial amendment that the agreement plaintiffs base their cause of action upon was intentionally omitted by the parties from the written instruments and allowed to rest in parol, at the request of the

insurance company, cannot affect the rule against varying the terms of the written instrument. This is not an allegation of fraud, was not so intended by the pleaders, and cannot be so considered. This allegation is also ineffectual to permit a recovery on the ground that the written instruments did not embody the entire agreement between the parties. It is always true, when there is a parol agreement contemporaneous with a written contract, but not embodied in the written instrument, that the written contract does not contain the entire agreement between the parties, but this fact does not permit proof of the parol agreement if such agreement changes or varies the written contract. To hold otherwise would be to abrogate the rule against varying the writing by parol. Coverdill v. Seymour, 94 Tex. 8, 57 S. W. 37.

The rule which preserves the sanctity of written agreements when such agreements are not attacked for fraud or mistake in their procurement or execution is a salutary rule which experience has shown tends to prevent fraud and perjury and to secure and protect the citizens in the enjoyment of their property rights, and it should not be frittered away by ingrafting thereon specious exceptions, which find support only in the supposed equity of the particular case. It seems to me that in this case no equity is shown by the petition which should cause a court to hesitate to enforce the rule. There is no allegation in the petition that the appellee has received or the plaintiffs paid one cent more than the amount of the original loan to them and interest thereon at the agreed rate of 8 per cent. per annum to the time of its payment.

I think the judgment of the court below should be affirmed.