## J. P. HOWELL v. CONNECTICUT FIRE INSURANCE COMPANY.

Springfield Court of Appeals, December 7, 1923.

1. **CONTRACTS: Contracts in Violation of Law Void.** With the exception of penalties provided merely as fiscal expedients or revenue excise regulations, contracts, the performance of which is a violation of law, are void, even though there is no express declarration in the statute declaring them void.

2. **INSURANCE: Failure to Comply Substantially with Motor Vehicle Law Renders Sale Void.** If both parties to sale of automobile fail to comply substantially with Motor Vehicle Law, requiring indorsement of certificate of ownership of an automobile as an assignment thereof, the transaction is unlawful, fraudulent, and void, and passes neither title nor insurable interest.

3. **SALES.** Motor Vehicle Law does not require acknowledgment of title certificate in transfer of an automobile, and hence failure to acknowledge certificate of title in a transfer did not defeat sale.

4. **ACKNOWLEDGMENT: Evidences Genuineness of Signature and Execution.** Acknowledgment is evidence of genuineness of signature and execution of instrument which is to be deposited for record.

5. **INSURANCE:** Bill of Sale Delivered with Certificate of Title Held Substantial Compliance with Motor Vehicle Law. Motor Vehicle Law, Session Acts 1921, page 90 section 18, providing that in the event of a sale or transfer of a motor vehicle the holder of the certificate of title shall indorse on the same an assignment thereof, according to a form to be determined by the Commissioner of Motor Vehicles, said form to contain a warranty of title and statement of liens and incumbrances, was substantially complied with where the seller did not sign the certificate of title on the back thereof, but did give the buyer the certificate of title, unsigned, together with a bill of sale describing the automobile in the same words and figures that was described on the face of the certificate of title, and containing everything that would have been contained in the form prescribed as printed on the back of said certificate; the buyer obtained both title and insurable interest in the automobile.

Appeal from the Circuit Court of Greene County.—*Hon. Guy D. Kirby,* Judge.

REVERSED AND REMANDED.

*L. H. Musgrave* and *C. W. Hamlin* for appellant.

(1) Plaintiff had at least an equitable title to the car at the time it burned, if not the legal title, as he bought and paid for the car, took physical possession of it, received a bill of sale, and the certificate of title, unsigned, and had possession of the insurance policy in which he was named as beneficiary. He therefore had an insurable interest and ought to recover. Travis v. Continental Insurance Co., 32 Mo. App. 198; Wisecup v. American Insurance Co., 186 Mo. App. 310, 317. (2) A contract void by law may hold good where there is a part performance. Bennett v. Clark, 252 S. W. 625. (3) Where a statute requires a certain thing to be done in order to make the transaction legal and effective or requires it to be done in a certain particular way in order that it may be valid

does not necessarily render every transaction, which apparently fails to meet the provisions of the statute literally, void. Littrell v. Brayton Motor and Accessory Co., 201 Pac. 34; Dunlop v. Mercer, 156 Fed. 545-546. (4) The assignment of the certificate of title at a later date related back to the time it should have been made. Martin v. Martin, 250 Mo. 539, 550.

*John Schmook* for respondent.

(1) The courts cannot and will not recognize as valid any contract made in disregard of positive law, and no contract can be legal if it violates a statute, or cannot be performed without the violation of such a statute. 6 Ruling Case Law, p. 699, secs. 105-107, 13 Corpus Juris, sec. 351, page 420; Downing v. Ringer, 7 Mo. 585; Pulitzer v. McNichols, 170 Mo. App. 709, 722; Shropshire v. Glascock, 4 Mo. 536; Hayden v. Little, 35 Mo. 418. (2) Such contracts are absolutely void and will not be enforced by the courts. 6 R. C. L., supra; 13 C. J., pp. 411, 412; Downing v. Ringer, supra. (3) Any act which is forbidden either by common law or statutory law, whether it is *malum in se,* or merely *malum prohibitum,* indictable, or only subject to a penalty, or forfeiture, or however otherwise prohibited by a statute or the common law, cannot be the foundation of a valid contract; nor can anything auxiliary to or promotive of such act. Friend v. Porter, 50 Mo. App. 89, 92; Greenhood on Public Policy, 17 ; Bishop on Contracts (Ed. of 1887), sec. 471. (4) When the Legislature has declared the policy and fixed the rights of the people by statute, the courts cannot declare a different policy, or fix different rights. Probasco v. Raine (Ohio), June 13, 1893. (5) A subsequent compliance with the statute cannot validate a contract attempted to be made before compliance. Blevins v. Fairley, 71 Mo. App. 259. (6) There can be no recovery even tho the statute has no provision expressly prohibiting a recovery. The law is not for the benefit of the

parties but for the public good. O'Bannon v. Widick, 198 S. W. 432. (7) A person cannot have an insurable interest where his only right arises under a contract which he had no authority to make, or which is void or unenforceable at law or equity. Joyce on the Law of Insurance (2 Ed.), secs. 892, 893, pp. 1929, 1930; Perry v. Mechanics Ins Co., 11 Fed. 478. (8) A policy issued where there is no insurable interest is a wager contract and is void if against principles of public policy or of positive law. Chancellor KENT, in Amory v. Gilman, 2 Mass. 1; Mount v. Waite, 7 Johns (N. Y.) 434; Pritchet v. Insurance Co. of North America, 3 Yates, (Pa.) 458.

FARRINGTON, J.—This suit was begun in the justice court on a policy of insurance for $200 which had been taken out to cover the loss by fire on a Chevrolet car. The case reached the circuit court on appeal and there a judgment was rendered for the defendant, from which an appeal is brought to this court.

The sole question to be determined here is, did the plaintiff have an insurable interest in the automobile at the time the policy was issued and at the time of the fire? If it be determined that he had, then the plaintiff should recover, and if he had no insurable interest then the judgment of the trial court must be affirmed.

The facts of the case are: On December 22, 1922, one S. G. Robertson was the owner of the automobile which is the subject of the insurance. He had paid the premium for a $200 policy of insurance to defendant's agent but the policy had not been delivered. On December 22, 1922, Robertson sold the automobile to the plaintiff and the policy, instead of being issued to Robertson, was made directly to the purchaser of the car, the plaintiff. On December 22nd, Robertson delivered to the plaintiff the policy sued on, the certificate of title which had been issued to him by the Secretary of State, a bill of sale which gave the purchaser and seller's name and address, set forth the consideration paid for the car, and described the car in the exact words and fig-

ures as it is described in the face of the State certificate, covenanted that it was free from encumbrance and that he had a legal right to dispose of same, and contained a warranty to defend the title against all claimants.    The bill of sale was signed by S. G. Robertson; it was not acknowledged.   On the 23nd day of December, 1922, the car burned, and after some negotiation with the insurance adjuster, liability was denied on the ground that the seller, S. G. Robertson, and the purchaser, J. P. Howell, had not conformed to the requirements of the law as set forth in the chapter on motor vehicles, found on page 76, Session Acts 1921, extra session, and particularly that portion of the law which relates to the transfer of cars and the certificates of title, found on page 90, which provides, among other things: "In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued, the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the commissioner, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer."    Then follows the requirements of the buyer to present the certificate to the commissioner, pay $1, who shall, if everything is in proper form, issue a new certificate.    The act also provides that the commissioner shall retain the old certificate as a record in his office, properly indexing the same, making it possible to trace the ownership of the motor vehicle described in the certificate.

It is further provided: "Four months after this law takes effect and thereafter, it shall be unlawful for any person to buy or sell in this State, any motor vehicle or trailer registered under the laws of this State, unless, at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any mo-

·tor vehicle or trailer registered under the laws of this State, without the assignment of such certificate of ownership, shall be fraudulent and void.'' ˙ The law further provides that ''the commissioner . shall determine the .form in which application for such certificate of ownership and the assignment shall be made, in case forms differing from those used for individuals are, in his judgment, reasonably required.''

The Act also provides penalties for various offenses, and contains the following blanket provision which would cover a failure to properly comply with the law in reference to the assignment of motor cars: ''Any person who violates any of the other provisions of this act shall, upon conviction thereof, be punished by a fine of not less than five dollars ($5) or more than five hundred ($500) or by imprisonment in the county jail for a term not exceeding two years, or by both such fine and imprisonment.''

The form which the commissioner prescribed for assignments, and which is written on the back of each certificate of title issued by his office, is as follows:

''Assignment of Title.''

''For value received I hereby sell, assign or transfer unto —————————— .(Name of Purchaser) (Address) ——————————, Missouri, the motor vehicle described on the reverse side of this Certificate, and I hereby warrant the title to said motor vehicle and certify that at the time of delivery the same is subject to the following liens or encumbrances, and none other:

Amount ——————. Kind ——————. Date ——————. Favor of ——————————.

Signed, ——————————Assignor.''

Following this assignment of title is a form for the assignor to acknowledge the execution of the assignment before a Notary Public. The point in this case upon which the defendant seeks to evade liability is that this blank form of assignment on the certificate of title was not signed by Robertson, the assignor, nor was it ac-

knowledged at the time the sale of the car was made, at the time the insurance was written, and at the time of the fire. Respondent therefore points to the law which by its expressed terms requires that an assignment be executed in the form prescribed by the commissioner, and further provides that a failure to comply with this law renders the transaction "unlawful," "fraudulent and void," and a provision setting forth the penalty for such failure. The theory being that the law not having been complied with, with reference to the sale of motor vehicles, the sale from Robertson to plaintiff was unlawful, fraudulent and void, and that therefore the consideration for the purported sale being unlawful the transaction between the parties, as they undertook to carry out the sale, vested no title or interest whatever to the car in the plaintiff, and having no interest or title he could have no insurance.

It is admitted that the plaintiff must have an insurable interest in order to recover on an insurance policy, but it is contended by the plaintiff that what was done in the acquisition of this car by him was a substantial compliance with the law, which vested title to the car in him and therefore gave him an insurable interest in it. On the other hand, the defendant contending that the failure on the part of the parties to comply with the statute renders the transaction unlawful, fraudulent and void, and therefore plaintiff acquired no interest or title by reason thereof to the car which was burned.

The law as settled in Missouri seems to be that a disregard or a violation of positive law cannot be a consideration for a valid contract and that such contracts will not be enforced in our courts, and this whether the act which is forbidden either at common law or by statutory law is *malum in se* or merely *malum prohibitum*. The following cases we think sustain the above statement of law: Downing v. Ringer, 7 Mo. 585; Pulitzer v. McNichols, 170 Mo. App. 709, 153 S. W. 562; Tri-State

Am. Co. v. Forest Park H. Am. Co., 192 Mo. 404, 90 S.
W. 1020; O'Bannon v. Widick, 198 S. W. 432, written by
this court, adopted by the Supreme Court in 220 S. W.
583; Tandy v. Elmore-Cooper Com. Co., 113 Mo. App.
409, 87 S. W. 614; Haggerty v. St. Louis I. & S. Co.,
143 Mo. 238, 44 S. W. 1114; Kitchen v. Greenbaum, 61
Mo. 110.

With the exception of penalties provided merely as
fiscal expedients or revenue excise regulations, the
courts of Missouri have declared that contracts, the per-
formance of which is a violation of law, are void, even
though there is no express declaration in the statute de-
claring such transactions void. The Missouri cases on
this subject are reviewed in an exhaustive opinion by
WARRINGTON, Circuit Judge, in Reichardt v. Hill, 236
Fed. 817. We must, therefore, hold that if the parties
to this transaction violated the Missouri law with refer-
ence to the sale of this automobile, then under the Mis-
souri authorities the sale to the plaintiff was a nullity
and void and he acquired no insurable interest in the
car because if his failure to follow the regulations was
a substantial violation of this law, such is declared in the
act itself as "fraudulent and void" and subject to a fine
or penalty.

As a reading of the Missouri cases will show, we
have not followed the rule which has been followed in
the United States Supreme Court and Federal Courts
and in a number of States, which is that unless the act
forbidden in expressed terms declares contracts void,
the mere fixing of a penalty will not render the contract
void. That line of cases holds that where the Legisla-
ture having merely fixed a punishment or penalty for
the forbidden act, it is not within the province of the
courts to go farther and add an additional penalty by
mere implication, that is the additional penalty of de-
claring contracts void. A notable case holding along
this line is that of Harris v. Runnels, by the Supreme
Court of the United States, 13 Law Ed. 901. It will

further be noted that in the last paragraph of that opinion it is shown that had there been a declaration in the statute declaring contracts in contravention of it as void, the decision would have been otherwise. We in the instant case have such declaration in the statute, "fraudulent and void." This question is discussed at length by SANBORN, C. J., in the case of Dunlap v. Mercer, 156 Fed. 545, and it will be found on page 557 in that opinion that he there calls attention to the fact that the statute there had not prescribed that contracts entered into in violation of the statute had been in expressed terms declared void. [See, also, Biggs v. Reliance Life Ins. Co., 195 S. W. 174; Lane v. Henry, 141 Pac. 365.]

Of course, in all of these cases holding that contracts had been rendered void unless there was an expressed declaration in the statute to that effect, the thing sought to be performed under the contract was not immoral or deleterious to the public good.

Appellant cites us to the case of Travis v. Continental Insurance Co., reported first in 32 Mo. App. 198, and again in 47 Mo. App. 482, which holds that a husband has an insurable interest in personal property which had been acquired with his wife's property, although he had not complied with section 7328, Revised Statutes 1919, which provides that to reduce to possession requires the express assent of the wife to be in writing. We do not deem this case to be of any authority here because the act of the husband there was not a violation of public law, no penalty was prescribed, and it nowhere declared such a transaction to be fraudulent and void; and besides, the statute was intended to merely fix the rights between two individuals and was not a statute for the general public safeguard and welfare, such as is the motor vehicle statute we are now dealing with.

Reiterating, we may say that if the parties, both the assignor of the car and the plaintiff, the assignee, failed to comply substantially with the motor vehicle law,

the transaction between them was unlawful, fraudulent and void and therefore not one that could pass title or insurable interest to the plaintiff. We are, however, of the opinion that the parties to this transaction did substantially comply with every requirement of the law. This law was passed as a general welfare safeguard to prevent the trafficking in stolen cars, and in order to prevent that evil which had become prevalent, the Legislature saw fit to require that parties dealing in motor cars comply with certain regulations. The statute is not only a statute for the general welfare but incidentally is one for the raising of revenue, and the law requires that before a transaction shall be valid in the purchase of a motor car, accompanying the delivery of the vehicle must be the title certificate issued by the Secretary of State. This was done in this case. The defendant knew that this car had been sold to plaintiff and issued its policy to him as the owner. In making this statement we are not deciding this case on the question of estoppel, as we doubt seriously whether there could be an estoppel arise out of an unlawful act. But to go farther, the form of assignment which is prescribed by the commissioner, printed on the back of the title sheet, was not signed, neither was it acknowledged. In this connection we may state that the statute calls for an assignment as shall be prescribed by the commissioner but nowhere does it specifically call for an acknowledgment. The acknowledgment in this case, as in practically all others, is merely a matter of evidence; it is evidence of the genuineness of the signature and the execution of the instrument which is to be deposited with some recording or filing officer. The acknowledgment ordinarily forms no part of the substance of the instrument or conveyance, but as stated before is merely evidence or required for the purpose of furnishing proof for the record. It does not affect the force of the instrument, and instruments which are otherwise in proper form are held valid as between the parties and title

passes with such unacknowledged conveyance or instrument. [See 1 R. C. L., secs. 10 and 11, page 257; Elsea v. Smith, 273 Mo. 396, 1. c. 411, 202 S. W. 1071.]

As stated by Judge THOMPSON, in the case of First Nat. Bank v. Hughes, 10 Mo. App. 7, 1. c. 18: "The officer's certificate is merely the prescribed evidence of the fact. It is in the nature of a formal historical statement of a thing done." The only purpose that the acknowledgment of the assignment could have under the motor vehicle law was to evidence the genuineness of the signature of the assignor of a motor vehicle and to further evidence the execution of that instrument containing the necessary provisions, and is evidence to him not for the purpose of transferring the title because the assignment itself does that, but for the purpose of enabling him to safely issue another certificate to the assignee, because such assignee has become the owner of the motor vehicle by virtue of such assignment.

The purpose of acquiring a new certificate by the purchaser of the car is twofold. First, to evidence his ownership, to be used by him in case he resells, and second, to raise revenue for the State.

We must, therefore, hold that the failure to acknowledge the assignment does not defeat the assignment, sale or transfer of title to the purchaser. It serves the office merely of evidencing such fact to the Secretary of State who, when such evidence is produced accompanied with $1, will issue a new certificate and retain the old certificate for record in his office.

This disposes of everything except the failure of the assignor to sign the assignment of title which was printed on the back of the certificate which was delivered to the purchaser. Undoubtedly an assignment is required by the law, and the failure to give an assignment would be a violation of the law, but we do not understand that the assignment must necessarily be made on any particular paper, that is to say that the whole thing is in violation of the law unless the assignment is filled out on the

printed form prescribed by the commissioner which is printed on the back of the certificate of title. It seems to us that it is perfectly apparent that any written assignment made by the person to whom the certificate was issued, setting forth the requisites as prescribed in the form on the back of the certificate of title and delivered to the assignee together with the title sheet would be sufficient to pass the title to the car. Turning to the evidence in the record we find that there was delivered with this certificate of title the following bill of sale, which of course is merely another name for an assignment:

"Bill of Sale"

"This Bill of Sale, made on the 22nd day of December, A D. 1922, by and between S. G. Robertson of Republic, Missouri, as Grantor, and J. P. Howell, of Republic, Missouri, as Grantee.

"WITNESSETH: That the said Grantor, in consideration of the sum of $374 to him paid, the receipt of which is hereby acknowledged, does hereby sell, assign, transfer, set over and deliver unto the said Grantee, the following described personal property, to-wit:

"One (1) Chevrolet Touring Car, Year 1918, Engine No. 12247, H. P. 22, Bore 3 11-16. Also, one (1) Ford Truck, Model——made 1918.

"TO HAVE AND TO HOLD said personal property unto said Grantee, and unto his heirs, executors, administrators and assigns forever. The said Grantor covenants that said property is free from encumbrances, none, and that he has the lawful right to sell and dispose of the same; and that he will warrant and defend the title thereto against all claimants whomsoever.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this the 22nd day of December, A. D. 1922.

(Signed) S. G. ROBERTSON."

This bill of sale describes in the same words and figures the automobile that is described in the face of the certificate of title; it gives the parties and their ad-

dresses; it states that there are no liens or encumbrances; it is duly signed. In addition to the requirement printed on the back of the certificate it gives the consideration, and in addition it warrants to defend the title. We, therefore, see that everything that would have been contained in the form prescribed by the commissioner as printed on the back of the certificate of title, and more, is contained in the bill of sale, and merely because it was not written on the same sheet of paper would not, in our opinion, render these parties guilty of violating the law or failing to comply with the necessary requirements in order to pass title. We, therefore, hold that the plaintiff in this case has substantially complied with the motor vehicle law so far as acquiring title to the car which defendant had insured. The object of the law is to prevent dealing in stolen automobiles, and the delivery of the certificate of title by the owner to the plaintiff together with the bill of sale which contained everything that the assignment prescribed by the commissioner would have contained had it been filled out, threw around the transaction the same safeguard against the evil intended to be suppressed as would have been accomplished by the blank form on the back of the certificate had it been filled out and signed instead. We therefore, hold that the plaintiff had an insurable interest in this car, and that the defendant cannot escape liability because the plaintiff had violated the motor vehicle law in respect to the purchase of the car. The judgment is reversed and the cause remanded. *Cox, P. J.,* and *Bradley, J.,* concur.