THE STATE ex rel. CONNECTICUT FIRE INSURANCE COMPANY OF HARTFORD v. ARGUS COX et al., Judges of Springfield Court of Appeals.

Division Two, December 31, 1924.

AUTOMOBILE: Sale by Holder of Certificate of Ownership: Assignment on Back. The provision of the Motor Vehicle Act of 1921 (Laws 1921, Ex. Sess., p. 90, sec. 18), requiring the assignment by the holder of a certificate of ownership of an automobile, in case of sale, to be made upon the back of the certificate and returned as a part of said certificate to the commissioner, is mandatory, and therefore the execution and delivery of a separate bill of sale, by such owner, to a purchaser, is not a substantial compliance with said law. Said act declared in express terms, that a sale of an automobile shall be declared fraudulent and void, unless the vendor attaches his signature to the assignment on the back of the certificate of title, and courts cannot by judicial construction say that a separate bill of sale is valid. The requirements of the act, being mandatory, cannot be dispensed with and some other method of assignment be substituted in lieu thereof; and the Court of Appeals in ruling to the contrary, and in holding that other methods amount to substantial compliance, contravened the construction often placed by this court upon laws of a similar nature.

Citations to Headnotes: Courts, 15 C. J. par. 518; Motor Vehicles, 28 Cyc. 50 (1926 Anno); Sales, 35 Cyc. 89 (1926 Anno).

*Certiorari.*

RECORD QUASHED.

*John Schmook* for relator; *Roy F. Britton* of counsel.

(1)   Respondent's opinion substitutes for the clean-cut unmistakable wording and language of Section 18, something entirely foreign thereto, at war therewith, not found therein, which could not as applied to this case, have been in the mind of the lawmaker, and at cross purposes with the clearly expressed intent of the Legislature as applied to the buyer and seller of a motor vehicle, other than dealers and manufacturers.   (2)   In addition, non-conformity to the requirements of said Section 18 is made unlawful, subject to fine or imprisonment, or both.   Heller v. Lutz, 254 Mo. 704; Hope v. Flentge, 140 Mo. 390; Feccheimer Co. v. Palmer, 282 Mo. 82; Cement Co. v. Kreis, 261 Mo. 160; Johnson v. Fecht, 185 Mo. 335; Liggett v. Bank, 233 Mo. 590; White v. Watkins, 23 Mo. 423; Drowning v. Ringer, 7 Mo. 585.

*Jesse W. Barrett,* Attorney-General, and *Wm. L. Vandeventer,* Special Assistant Attorney-General, *amici curiae.*

The primary rule for the interpretation of statutes is that the legislative intention should be ascertained from the language used, and the clear meaning of unequivocal language in a statute cannot be overthrown by the construction of the court so that said act can be interpreted according to their own notion of what ought to have been enacted.   Grier v. Railway, 286 Mo. 523; Lincoln University v. Hackmann, 243 S. W. 320.

*L. H. Musgrave* and *C. W. Hamlin* for respondents.

This court will not interfere and quash an opinion rendered by the Court of Appeals unless said opinion shows upon its face that it is in conflict with the last previous ruling of the Supreme Court on the same or similar proposition involved.   State ex rel. Am. Exp.

Co. v. Allen, 256 S. W. 1041; State ex rel. Henry v. Allen, 263 S. W. 190. A merely erroneous construction, by the appellate court, of a statutory provision, on which the Supreme Court has not passed, vests no superintending jurisdiction in the latter by writ of *certiorari*. State ex rel. Elec. Co. v. Allen, 251 S. W. 917. Upon *certiorari* the Supreme Court is not concerned with anything except whether the opinion in the case under review conflicts with its last decision upon the same or similar proposition and in determining that fact will look only to the decision under review. State ex rel. Am. Packing Co. v. Reynolds, 230 S. W. 642; State ex rel. Cont. Ins. Co. v. Reynolds, 290 Mo. 363; State ex rel. Calhoun v. Reynolds, 289 Mo. 506. In a *certiorari* proceedings to have a decision of the Court of Appeals declared void for the reason that it conflicts with the last previous ruling of the Supreme Court upon the same or similar proposition the Supreme Court is not called upon to determine and will not determine whether the views as expressed by the Court of Appeals are correct or incorrect, but is only to decide whether they conflict with the last controlling decision of its own on the proposition involved in the case. State ex rel. Wahl v. Reynolds, 272 Mo. 588; State ex rel. Theological Seminary v. Ellison, 216 S. W. 969.

RAILEY, C.—This is an application by relator to quash the record of the Springfield Court of Appeals, in the case of Howell, Respondent, v. Connecticut Fire Insurance Company, Appellant, reported in full at pages 178 and following of 257 S. W. Reporter. As a matter of convenience, in considering the case, we will refer to same as published in the Reporter, supra, and will refer to Howell as plaintiff or respondent, and to the insurance company as defendant or appellant. After the case reached this Division by assignment, the Attorney-General and his assistant were permitted to file a brief, and appear as *amici curiae* in behalf of relator and the State.

It appears from the decision of the Springfield Court of Appeals, as reported in 257 S. W. at pages 178 and following, that plaintiff, Howell, sued this relator in the justice's court of Howell County, Missouri, on a policy of insurance for $200, which had been taken out to cover the loss by fire on a Chevrolet car. The case reached the circuit court on appeal, and there a judgment was rendered for the defendant, from which an appeal was taken by Howell to the Springfield Court of Appeals. The latter reversed and remanded the cause and, hence, this application for a writ of *certiorari* by the above named defendant.

Respondents, in their opinion, assert that: "The sole question to be determined here is, did the plaintiff have an insurable interest in the automobile at the time the policy was issued and at the time of the fire? If it be determined that he had, then the plaintiff should recover, and, if he had no insurable interest, then the judgment of the trial court must be affirmed."

A motion for rehearing was filed and overruled in the Court of Appeals and, hence, its decision is final, unless quashed in this proceeding.

The determination of the issue presented by the Court of Appeals involves the application and construction of the provisions of the Motor Vehicle Law, passed by the Fifty-first General Assembly (Extra Session), and reported in Laws 1921, Ex. Sess., at pages 76 to 107 inclusive.

It appears from the facts, as stated in the opinion of respondents, that on December 22, 1922 (257 S. W. p. 179), one S. G. Robertson was the owner of the automobile which is the subject of the insurance. He had paid the premium for a $200 policy of insurance to this relator's agent, but the policy had not been delivered. On said December 22nd, Robertson sold the automobile to the plaintiff, and the policy, instead of being issued to Robertson, was made directly to Howell, the purchaser of the car. On the same date above mentioned,

Robertson delivered to the plaintiff the policy sued on, the certificate of title, which had been issued to him by the Secretary of State, a bill of sale which gave the purchaser and seller's name and address, set forth the consideration paid for the car, and described the car in the exact words and figures as it is described in the face of the state certificate, covenanted that it was free from incumbrance, that he had a legal right to dispose of same, and that it contained a warranty to defend the title against all claimants. The bill of sale was signed by S. G. Robertson and it was not acknowledged. On the 23rd of December, 1922, the car burned, and, after some negotiation with the insurance adjuster, liability was denied on the ground that the *seller*, S. G. Robertson, and the *purchaser*, J. P. Howell, had not conformed to the requirements of the law as set forth in the chapter on motor vehicles, found on page 76 and following, Laws 1921, Ex. Sess., and particularly that portion of the law which relates to the transfer of cars and the certificates of title, found on page 90 (Section 18) of said act which provides, among other things:

"In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the commissioner, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer. The buyer shall then present such certificate, assigned as aforesaid, to the commissioner, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, the fee therefor being $1. If such motor vehicle or trailer is sold to a resident of another state or country, or if such motor vehicle or trailer is destroyed or dismantled, the owner thereof shall immediately

notify the commissioner. Certificates when so assigned and returned to the commissioner shall be retained by the commissioner and all certificates shall be appropriately indexed so that at all times it will be possible for him to expeditiously trace the ownership of the motor vehicle or trailer designated therein. Four months after this law takes effect and thereafter, it shall be unlawful for any person to buy or sell in this State any motor vehicle or trailer registered under the laws of this State, unless, at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided and the sale of any motor vehicle or trailer registered under the laws of this State, without the assignment of such certificate of ownership, shall be fraudulent and void. . . .    The commissioner shall determine the form in which application for such certificate of ownership and assignments shall be made, in case forms differing from those used for individuals are, in his judgment, reasonably required; . . .

"The commissioner shall co-operate with the commissioners or the officials of other states and countries having supervision of the registration of motor vehicles and shall exchange information with them relative to the registration, ownership, sale and theft of motor vehicles, for the purpose of suppressing the stealing and unauthorized use of motor vehicles."

Section 29 of said act, after providing a number of penalties for a violation of said law, contains paragraph (d), which reads as follows:

"Any person who violates any of the other provisions of this act shall, upon conviction thereof, be punished by a fine of not less than five dollars or more than five hundred dollars or by imprisonment in the county jail for a term not exceeding two years, or by both such fine and imprisonment."

The form which the commissioner prescribed for assignments and which is written or printed on the back

of each certificate of title issued by his office, is as follows:

### "Assignment of Title"

"For value received I hereby sell, assign or transfer unto ———— (name of purchaser), (address) ————, Missouri, the motor vehicle described on the reverse side of this certificate, and I hereby warrant the title to said motor vehicle and certify that at the time of delivery the same is subject to the following liens or incumbrances, and none other:

"Amount ————, Kind ————, Date ————, Favor of ————.

"(signed) ————, Assignor."

[See 257 S. W. p. 179.]

In the opinion respondents say:

*"Following this assignment of title is a form for the assignor to acknowledge the execution of the assignment before a notary public.* The point in this case upon which the defendant seeks to evade liability is that this blank form of *assignment* on the *certificate* of title *was not signed by Robertson, the assignor, nor was it acknowledged at the time the sale of the car was made, at the time the insurance was written, and at the time of the fire.* Respondent therefore points to the law which by its *expressed terms requires that an assignment* be executed in the form prescribed by the commissioner, and further provides that a failure to comply with this law renders the transaction 'unlawful, fraudulent, and void,' and a provision setting forth the penalty for such failure; the theory being that the law not having been complied with, with reference to the sale of motor vehicles, the sale from Robertson to plaintiff was unlawful, fraudulent and void, and that therefore the consideration for the purported sale being unlawful the transaction between the parties, as they undertook to carry out the sale, vested no title or interest whatever to the car in the plaintiff, and having no interest or title he could have no insurance." (Italics ours).

The Court of Appeals refused to follow the above requirements of the law, and held, that the bill of sale, hereafter referred to, given by Robertson to plaintiff Howell, was a substantial compliance with the law, and that plaintiff therefore had an insurable interest in the automobile which burned and could maintain the above action. On the other hand, relator contends that the Court of Appeals, in holding as above indicated, refused to follow the last previous rulings of our Supreme Court, and that the record of said court should accordingly be quashed.

These matters will be considered in the opinion.

I. It is held by the respondents, following their statement of the facts and conclusions of law heretofore set out, that the execution and delivery of the bill of sale given by S. G. Robertson to plaintiff Howell on December 22, 1922, which described the automobile in controversy, and contained a warranty of title, was a sufficient compliance with the motor vehicle law. It is contended by relator that the above ruling of respondents is in conflict with the last previous rulings of our Supreme Court in the following cases: Downing v. Ringer, 7 Mo. 585; Kitchen v. Greenabaum, 61 Mo. 110; Haggerty v. Ice Mfg. & Storage Co., 143 Mo. 238; Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404, 90 S. W. 1022; Heller v. Lutz, 254 Mo. 704; O'Bannon v. Wydick, 281 Mo. 478, 220 S. W. 853.]

In considering these cases, the respondents, in 257 S. W. l. c. 180, say:

"The law as settled in Missouri, seems to be that a disregard or a violation of positive law cannot be a consideration for a valid contract, and that such contracts will not be enforced in our courts, and this whether the act which is forbidden either at common law or by statutory law is *malum in se* or merely *malum prohibitum.*"

The above and other cases are cited by respondents as properly declaring the law of this State  In line with

the above cases, and in harmony with them, may be cited the following: Sprague v. Rooney, 104 Mo. l. c. 359; Mill & Lumber Co. v. Sims, 197 Mo. 507; Roeder v. Robertson, 202 Mo. l. c. 537, 100 S. W. 1086; United Shoe Machinery Co. v. Ramlose, 210 Mo. l. c. 649, 109 S. W. 567; Zinc & Lead Co. v. Zinc Mining Co., 221 Mo. l. c. 15; State v. Railroad, 242 Mo. 339; State v. Railroad, 253 Mo. 642; Booth v. Scott, 276 Mo. l. c. 31 and cases cited.]

In the recent case of State ex rel. American Press v. Allen, 256 S. W. l. c. 1052, in discussing a *certiorari* proceeding, we said:

"The Court of Appeals had jurisdiction over the subject-matter, and likewise of the parties to said action. As long as said court promulgated no rule of law which could be said to conflict with a former ruling of this court on the same or similar facts, it had the inherent right to determine the issues involved, whether its rulings be right or wrong."

It therefore becomes important at the outset in properly considering the merits of this controversy, to determine, under our previous rulings, whether the provisions of the Motor Vehicle Law of 1921, in respect to the matters now under consideration, are mandatory in their terms, or whether the requirements of said act can be dispensed with and some other act performed in lieu of said requirements, which by judicial construction might be considered a substantial compliance with said law. While the above act incidentally is intended to raise revenue, yet it is essentially a police regulation of the highest type, in which the public welfare was primarily considered in its enactment.

The respondents in the case under review, 257 S. W. l. c. 181, have correctly stated the purpose of said law, as follows:

"This law was passed as a general welfare safeguard to prevent the trafficking in stolen cars, and, in order to prevent that evil which had become prevalent, the Legislature saw fit to require that parties dealing in

306 Mo.—35

motor cars comply with certain regulations. The statute is not only a statute for the general welfare, but incidentally is one for the raising of revenue, and the law requires that before a transaction shall be valid in the purchase of a motor car, accompanying the delivery of the vehicle must be the title certificate issued by the Secretary of State. This was done in this case. . . . But, to go farther, the form of assignment which is prescribed by the commissioner, printed on the back of the title sheet, was not signed, neither was it acknowledged.''

It will be seen, that the law requires the certificate, when properly assigned on the back of same, to be returned to the commissioner, and perpetuated by him, as a public record and as a muniment of title, which can be referred to as evidence in tracing crime, and collecting the revenue due the State on the machine. [Griffith v. Continental Casualty Co., 299 Mo. l. c. 443, 253 S. W. l. c. 1048; Simpson v. Wells, 292 Mo. 301, 237 S. W. 520.] The bill of sale (257 S. W. l. c. 181), referred to by respondents, as furnishing a substantial compliance with above act, was not a document required by said law to be delivered to the commissioner and held by him as a public record for the purposes aforesaid. On the contrary, the bill of sale was delivered to Howell, the prospective purchaser, as his individual property, and not as a public document to be kept by the commissioner. The above Act of 1921 not only required Robertson to make an assignment on the back of his certificate of title as a condition precedent to his making a valid sale of the machine, but the law, as above quoted, described an attempted sale without a compliance with the requirements aforesaid as fraudulent and void. In addition to foregoing, Section 29 of said act makes the violation of the requirements aforesaid, a criminal offense. Following the construction placed by this court upon laws of a similar nature, as disclosed in the cases heretofore cited, we are driven to the inevitable conclusion that the provision of the above act requiring the assignment, in case of a sale, to be made on the back of

State ex rel. Connecticut Fire Ins. Co. v. Cox.

the certificate of title and returned as a part of such certificate is mandatory in its terms, and that the execution and delivery of the bill of sale was not a substantial compliance with said law.

In Downing v. Ringer, 7 Mo. 1. c. 586, suit was brought on a note given for the purchase money of a town lot. The plat laws of Missouri provided that if any person sell, or offer for sale, any lot before the map, or plat of the town be made out, acknowledged and recorded, such person should forfeit a sum not exceeding three hundred dollars for every lot he shall sell or offer to sell. Judge NAPTON, on page 586, in discussing the validity of said note, said: ''The penalty inflicted by the act concerning plats of towns and villages implies a prohibition against the sale of lots before the requisitions of the act are complied with, and the courts will not enforce a contract entered into against the spirit and policy of the statute.''

In Haggerty v. Ice Mfg. & Storage Co., 143 Mo. 238, the game laws of Missouri prohibited any person from selling or having in possession, during certain season of the year, game or animals mentioned therein. Plaintiff contracted with defendant, in violation of said law, to place in cold storage a large quantity of game. The latter was received by defendant, and when it delivered same in the spring the game was spoiled. Plaintiff sued defendant for $7000 damages. Judge SHERWOOD, in disposing of the case, on pages 247-8, said: ''The law will not stultify itself by promoting on the one hand what it prohibits on the other, and will for this reason leave the parties to this suit where it finds them, unsanctioned by its favor and unaided by its process.''

In Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404, the plaintiff, a foreign corporation, which had not paid the incorporation tax required by the statute, nor been licensed to do business in Missouri, brought suit on a contract made in violation of the above law, and sought to avoid the legal effect of complying with said law by showing that it substantially complied with

same, by taking out a license after the violation of said act. Judge MARSHALL, in passing upon the merits of the case, said: "The statute prohibits foreign corporations from doing business in this State without first having complied with the law. Such a prohibition is as effective to make a contract entered into by such foreign corporation in this State void as if the statute had in terms declared such contracts to be void. The general rule of law is that where an act is prohibited or declared unlawful, it is not necessary for the law to declare the act or contract void. An unlawful act is itself void. This has been the rule of law in this State ever since the decision of this court in Downing v. Ringer, 7 Mo. 586.''

In Mill & Lumber Co. v. Sims, 197 Mo. 507, defendant conveyed by deed to a foreign corporation the timber on his land in Missouri, and warranted the title thereto, but having afterwards sold the land to another, without any reservation, the foreign company sued him for breach of his warranty. The plaintiff had an office for its purchasing agent in Missouri, but no factory or plant of any kind. Prior to the execution of said deed, the only business which plaintiff did in this State, with the exception of the purchase of the above timber on one tract of land, was to buy lumber and ship it to Illinois. The plaintiff had not complied with the statute of this State relating to foreign corporations, and received no certificate from the Secretary of State authorizing it to do business here, until after said purchase was made, and until shortly before the suit was begun. This court, speaking through Judge BURGESS, held that plaintiff's contract was void, non-enforceable, and that there could be no recovery for breach of said warranty.

In United Shoe Machinery Co. v. Ramlose, 210 Mo., a foreign corporation, which had failed to comply with our law, brought suit in this State to recover possession of certain shoemaking machinery. Judge BURGESS, on page 649, after reviewing certain sections of our statute, said: "It is plain from these sections of the statute that foreign corporations are prohibited from doing any

business in this State without complying with their provisions, and they not only declare all contracts entered into in this State by foreign corporations, not complying therewith, void, but inhibit the institution of any suit thereon. That the Supreme Court has upon several occasions so interpreted these statutes is shown by the following adjudications: Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; State ex inf. Attorney-General v. Standard Oil Co., 194 Mo. 124; Mill & Lumber Co. v. Sims, 197 Mo. 507; First National Bank v. Leeper, 97 S. W. 636; Wilson-Moline Buggy Co. v. Prieve, 100 S. W. 558; Roeder v. Robertson, 202 Mo. 522.''

In Zinc & Lead Co. v. Zinc Mining Co., 221 Mo. 7, the plaintiff, a foreign corporation, opened a place of business in this State, without obtaining a license, etc. Judge GRAVES, on page 15, in considering the case, said: ''The most efficient way to compel obedience to this statute is to enforce it as it reads, and not amend it by judicial construction so as to enable foreign corporations to avoid the consequences of a non-compliance with its terms by complying after the penalties have been incurred. We therefore hold that a foreign corporation doing business in this State without first complying with the statute cannot maintain an action in the courts of this State upon any contract or demand growing out of such business. Nor will compliance by it with the statute after the making of such a contract, or after the commencement of an action thereon, remove the bar of the statute.''

In concluding the opinion, Judge GRAVES held, that: ''Taking out a license after bringing the suit neither validated the theretofore illegal contract, nor did it change the status of the plaintiff, at the time of the institution of the suit. Being an outlaw at the beginning of the case it must so continue throughout.''

In State v. Missouri Pacific Railway Co., 242 Mo. 339, our Court in Banc upheld the Act of 1911, Laws 1911, page 150, which reads as follows:

"Sec. 1. All corporations doing business in this State, which shall employ any mechanics, laborers or other servants, shall pay the wages of such employees as often as semi-monthly.

"Sec. 2. Any corporation violating Section 1 of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not less than fifty dollars, nor more than five hundred dollars, for each offense."

There is nothing in the act which in express terms forbade the corporation to hire such servant under a contract based upon a valid consideration, but the court, in sustaining the fine of $50, imposed on defendant, at page 373, said: "As we have heretofore found that the law does tend to promote the welfare of defendant's employees and the general public, and is not needlessly injurious or oppressive to corporations, it must follow that if it be constitutional, no valid contract can be made in this State which conflicts with its provisions."

In State v. St. Louis Iron Mountain & Southern Ry. Co., 253 Mo. 642, the State sued to recover from defendant ten dollars per day for 110 days for a violation of the provisions of Section 3158, Revised Statutes 1909, which required the Railway Company to deliver and receive freight at crossing of other roads, etc. The penalty provided at the conclusion of said section reads as follows:

"Any railroad corporation failing or refusing to comply with the provisions of this section after thirty days' notice given shall forfeit and pay to the good-roads fund of this State the sum of ten dollars for each day they shall so fail or refuse to comply with the provisions of this section, to be recovered in any court of competent jurisdiction by civil action brought in the name of the State by the prosecuting attorney of the county wherein such failure or refusal occurs."

The railroad company defended the case on the ground that the penalty of ten dollars per day went to

the good roads fund, when under our Constitution all penalties of the above character were required to go to the school fund, etc. The State sought to have the court hold that, as the Constitution requires all fines, penalties, etc., to go to the school fund, the "good roads" part of said section might be eliminated, and "school fund" interpolated in lieu of same. Judge Bond, speaking for Court in Banc, in discussing this subject, said: "We do not understand that it is pretended that a sentence which completely expresses the thought of its author, can be physically spoliated so as to express a contrary idea and still continue to bear the meaning which it carried before. There is no rule of construction which would tolerate such an abnormality."

The penalty clause of said section was declared to mean what it said on its face, and was therefore unconstitutional.

In Heller v. Lutz, 254 Mo. 704, it appears, that an employee of defendant became indebted to plaintiff and, on August 16, 1911, to secure said indebtedness, gave to plaintiff a written assignment of all money or wages due, or to become due to him from defendant within a period of six months from the date of said assignment. No money or wages were due the assignor from defendant at the time of said assignment. On September 23, 1911, plaintiff brought suit against defendant to recover the amount of Hannigan's debt to him. The trial court rendered judgment for defendant. Its ruling was based on the Act of 1911, at page 143, which provides that: "All assignments of wages, salaries or earnings must be in writing, with the correct date of the assignment and the amount assigned and the name or names of the party or parties owing the wages, salaries and earnings so assigned; and all assignments of wages, salaries and earnings, not earned at the time the assignment is made, shall be null and void." The Court in Banc sustained the foregoing statute, as a

police regulation, notwithstanding it had the effect of limiting the right of personal contract.

In Booth v. Scott, 276 Mo. l. c. 31, Judge BROWN, in behalf of Division One, said: "That all contracts made or attempted to be made in this State by foreign corporations not licensed to do business in this State as required by the provisions of Section 3039, Revised Statutes 1909, are absolutely void, has been too often decided by this court to be still an open question."

The principles of law declared in the foregoing cases to the effect that contracts made here, by foreign corporations, which have not been licensed to do business in this State, etc., are void, notwithstanding they may have taken out proper licenses before suits were brought, in our opinion, are in direct conflict with the ruling of the Court of Appeals complained of in this case.

Keeping in mind the fact that the Act of 1921, under consideration, is intended primarily as a typical police regulation for the benefit of the public, why should its plain provisions be dispensed with, and something else substituted in its place by judicial construction? When the Act of 1921 became effective, it declared in express terms that a sale of an automobile shall be declared fraudulent and void, unless the vendor attaches his signature to the assignment on the back of his certificate of title, etc. This law was utterly ignored in the present controversy and, hence, the ruling of respondents, in sustaining said sale, is in conflict with the principles of law declared in the foregoing cases relating to the same subject.

II.   Having reached the conclusion that the opinion of the Springfield Court of Appeals as reported in 257 S. W. Reporter, at pages 278 and following, conflicts with controlling decisions of this court, we accordingly quash the record of said court, in the case of Howell v.

Connecticut Fire Insurance Co., numbered 3493 therein. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur, except *Walker, J.,* absent.