**MACKIE AND WILLIAMS FOOD STORES, Inc., a Corporation, Appellant,**

v.

**ANCHOR CASUALTY COMPANY, a Corporation, Appellee.**

**No. 15060.**

United States Court of Appeals Eighth Circuit.

Oct. 20, 1954.

---

1. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; May v. Maurer, 10 Cir., 185 F.2d 475.

Jayne & Jayne, Kirksville, Mo., filed brief for appellant.

Roy Hamlin, Hannibal, Mo., Sam Mandell and Popham, Thompson, Popham, Mandell, Trusty & Green, Kansas City, Mo., filed brief for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

The Anchor Casualty Company issued its Comprehensive Liability Policy to which was attached its Automobile Liability Endorsement to Mackie and Williams Food Stores, Inc., a Missouri corporation with its office at Kirksville, Missouri. Under the policy and endorsement the insurer, Anchor, agreed to pay for any loss or damage by fire to any of the automotive vehicles and trailers described therein and to extend such insurance to any other vehicle to which the insured, Mackie and Williams, acquired ownership, upon notice of such acquisition. W. O. Mackie, of Kirksville, Missouri, held a judgment against Ray Farrar, of Little Rock, Arkansas, for a debt owed Mackie personally. Farrar went into bankruptcy, and at a receiver's sale held at Little Rock, Arkansas, January 23, 1952, Mackie bought in a large tractor and semi-trailer. Mackie had two businesses, one the Mackie Wholesale Grocery Company of Kirksville, Missouri, the other a retail corporation, Mackie and Williams Food Stores, Inc., (the insured herein), operating food stores at Memphis, Kahoka, Unionville, Milan, Macon, and Mexico, Missouri, and Bloomfield, Iowa. The Mackie Wholesale Grocery Company had advanced the money with which Mackie bought the vehicles involved at the receiver's sale. At the time of the receiver's sale, the Arkansas certificates of title to the vehicles were endorsed in blank and delivered to Mackie and R. F. Boyd of Joplin, Missouri. The vehicles were moved to the lot of Patton and Boyd at Joplin, Missouri, for sale, Boyd taking the Arkansas certificates of title with him to Joplin. No application for a Missouri certificate of ownership was made by Mackie. On March 15, 1952, the Mackie and Williams Food Stores, Inc.,

repaid the Mackie Wholesale Grocery Company the money the latter had advanced Mackie to purchase the vehicles, and it appears that on that date Mackie sold the vehicles to Mackie and Williams. March 17, 1952, Boyd was directed by letter to and did send the Arkansas certificates of title to the Mackie and Williams Food Stores, Inc. Mackie had obtained no certificate of title and transferred no Missouri certificate to Mackie and Williams. On March 17, 1952, the agent who had issued the policy of insurance to Mackie-Williams was called to the latter's office and advised that the insured had purchased the vehicles and wished to give the insurer notice of their acquisition in order to have them covered by the insurance. The agent advised the representatives of Mackie-Williams that the policy provided (and it did) that the vehicles were automatically covered for a period of thirty days without being endorsed on the policy.

The vehicles remained on the lot of Patton and Boyd. March 24, 1952, they were leased by Patton and Boyd, acting for Mackie-Williams, to the Tri-State Warehousing and Distributing Company, which was engaged in hauling explosives. That lease was executed in the name of Patton-Boyd-Ray Farrar as lessors. Farrar was the former owner in whose name the Arkansas certificates of title still stood. The vehicles were operated on the old Arkansas license plates issued to Farrar. On April 3, 1952, the vehicles were destroyed by fire, while the Mackie-Williams policy was in force.

The insurer brought this declaratory judgment action seeking a judgment that it was not liable to Mackie-Williams for the loss. Motion for summary judgment was made and sustained and judgment was entered that the policy did not cover the loss. While other issues were presented by the pleadings, the trial court based its judgment solely on the theory that because the Missouri statute relating to the transfer of title to motor vehicles was not complied with, Mackie-Williams had no insurable interest in the vehicles. Finding, as we do, that under the Missouri law the judgment is correct upon the ground it was based, it is unnecessary to refer to the other issues or the facts relating thereto.

The statutes of Missouri make the following requirements relating to the ownership and transfer of title of motor vehicles in Missouri:

301.020. "Every owner of a motor vehicle or trailer, which shall be operated or driven upon the highways of this state, except as herein otherwise expressly provided, shall file * * * in the office of the director of revenue, an application for registration * * *." § 301.020 RSMo 1949, V.A.M.S.

301.190. "No certificate of registration of any motor vehicle or trailer, or number plate therefor, shall be issued by the director of revenue unless the applicant therefor shall make application for and be granted a certificate of ownership of such motor vehicle or trailer, or shall present satisfactory evidence that such certificate has been previously issued to the applicant for such motor vehicle or trailer. * * *" § 301.190 RSMo 1949, V.A.M.S.

301.210. "1. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, * * * and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer.

"2. The buyer shall then present such certificate, assigned as aforesaid, to the director of revenue, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, the fee therefor being one dollar.

*　　*　　*　　*　　*　　*

"4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void." § 301.210 RSMo 1949, V.A.M.S.

301.010. " * * * the term owner shall include any person, firm, corporation or association, owning or renting a motor vehicle, or having the exclusive use thereof under lease, or otherwise, for a period greater than ten days successively; * * *." § 301.010 RSMo 1949, paragraph (16), V.A.M.S.

It would be trite to elaborate upon the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, that the law of Missouri must be followed.

The trial court deemed Craig v. Rueseler Motor Co., Mo.App., 159 S.W.2d 374; State ex rel. Conn. Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456; Evens v. Home Ins. Co., 231 Mo.App. 932, 82 S.W.2d 111, and Mathes v. Westchester Fire Ins. Co., Mo.App., 6 S.W.2d 66, controlling. We find that they are controlling.

If Mackie operated or drove the vehicles he purchased upon the highways of Missouri, the law required him to make application for registration thereof. § 301.020 RSMo 1949, V.A.M.S. With the former owner's written permission it appears that he could have lawfully used the Arkansas license plates for a period of fifteen days. But that permission would not have excused him from applying for the registration of the vehicles in Missouri in order for him to perfect a transferable title. The record does not show whether the vehicles were operated upon the highways of Missouri during the time they were in the possession of

Patton and Boyd, in Joplin, prior to the date they were leased on March 24, 1952. The inference is that they were not, as Mackie testified in depositions submitted on the motion for summary judgment that they were left on Patton and Boyd's lot for sale. Whether he operated the vehicles on the highways of Missouri or did not do so, it was clearly his duty under the Missouri law, as their owner, to apply for and obtain a certificate of ownership and transfer that certificate to Mackie and Williams at the time of sale to the latter. § 301.210, Paragraph 2, RSMo 1949, V.A.M.S.

The crux of Mackie and Williams' argument that failure on its part to obtain a certificate of ownership did not deprive it of having an insurable interest in the vehicles is that paragraph 4 of § 301.210 did not apply, because by the very terms of that paragraph it applied only to motor vehicles registered under the laws of Missouri.

If Mackie and Williams had been the original purchaser from the receiver in Arkansas and had obtained an assignment of the Arkansas certificate of title sufficient to pass title under the law of Arkansas to the vehicle registered in that state, the Missouri statute would not deprive the Missouri purchaser of a vehicle purchased in Arkansas of having an insurable interest in that vehicle until he had procured a Missouri certificate of ownership upon timely application therefor. Crawford v. General Exchange Ins. Corp., Mo.App., 119 S.W. 2d 458. But such is not the case. Mackie and Williams purchased from Mackie. The question, therefore, is whether Mackie and Williams became vested with an insurable interest in the vehicles by the transfer from Mackie to it of Farrar's Arkansas certificate assigned in blank. Otherwise stated, did Mackie have such title as he could convey to Mackie and Williams? For the same reason that Mackie and Williams would have acquired an insurable interest if it had received the Arkansas certificate direct from Farrar's receiver, Mackie became vested with such an interest upon

receipt of the assigned Arkansas title. Crawford v. General Exchange Ins. Corp., supra. But until Mackie complied with the Missouri law and obtained a Missouri certificate of ownership, he did not possess such a title as could under the Missouri law be conveyed to Mackie and Williams. Paragraphs 1 and 2 of § 301.210, supra, apply to the sale of any motor vehicle for which a certificate of ownership has theretofore been issued, regardless of where that certificate was issued. The purpose of the law being to provide a ready means of tracing title and ownership, it is of no consequence whether the evidence of title issued in another state be called a certificate of ownership or by some other name. Paragraph 1, supra, requires as a prerequisite to obtaining a transferable Missouri title that the seller in Arkansas or any other state shall assign the evidence or certificate of ownership to the Missouri buyer. The latter must then, pursuant to paragraph 2 of § 301.210, supra, present the outstate certificate to the director of revenue, whereupon a new certificate of ownership is issued to the buyer. Since the complete transaction between Mackie and Mackie and Williams is controlled by the law of Missouri, Mackie did not have any title which he could convey, absent compliance with the Missouri statute requiring him to obtain a Missouri certificate of ownership.

■ Compliance with the Missouri statute is mandatory, and noncompliance prevents the vendee from obtaining an insurable interest in the vehicle. In Howell v. Connecticut Fire Ins. Co., 215 Mo.App. 386, 257 S.W. 178, the Springfield Court of Appeals had before it the following state of facts: Robertson owned an automobile. He applied for insurance on it. Before the policy was issued, he sold the car to Howell. The insurance company was notified of the sale and issued the policy to Howell. Robertson gave Howell a bill of sale for the car at the time of the sale. He also gave Howell the Missouri certificate of ownership which had been issued to him, Robertson. But the formal assignment of the certificate was not executed. The car burned. The insurance company defended on the ground that because the certificate of title [1] was not assigned in the manner the Missouri statute required, Howell had acquired no insurable interest in the car. The Springfield Court of Appeals, examining the purpose of the statute in question—the same then in all respects now material as the present statute—concluded that the object of the law requiring the assignment of the title being to prevent dealing in stolen automobiles, and since everything was contained in the bill of sale which the formal assignment printed on the back of the certificate contained, the fact that the bill of sale was a separate sheet of paper did not prevent the transaction from constituting a substantial compliance with the law and Howell, therefore, had an insurable interest in the automobile. But the Missouri Supreme Court on certiorari reversed. State ex rel. Conn. Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87. It said that the provisions of the Missouri Motor Vehicle Act were essentially a police regulation of the highest type, in the enactment of which the public welfare was primarily considered. It held that the express terms of the statute that the vendor attach his signature to the assignment on the back of his certificate of title could not be dispensed with and substantial compliance substituted therefor even to create insurable interest. There is no escape from the conclusion that under the law of Missouri literal, technical compliance with the requirements of the statute is mandatory and essential to the passing and acquisition of an insurable interest. Some of the other Missouri cases so holding are: Personal Finance Co. of Missouri v. Lewis Inv. Co., Mo.

I. The present statute refers to this certificate as the certificate of ownership. The certificate itself has printed thereon "Certificate of Title." The Missouri cases usually refer to the instrument as the certificate of title. Both mean the same thing.

App., 138 S.W.2d 655; Sullivan v. Gault, Mo.App., 299 S.W. 1116; Mathes v. Westchester Fire Ins. Co., Mo.App., 6 S.W.2d 66; Evens v. Home Ins. Co., 231 Mo.App. 932, 82 S.W.2d 111; Isaacson v. Van Gundy, Mo.App., 48 S.W.2d 208; Crawford v. General Exchange Ins. Corp., Mo. App., 119 S.W.2d 458; Universal Credit Co. v. Story, Mo.App., 128 S.W.2d 654.

The Missouri Courts have recognized that the application of the foregoing rule sometimes works hardships on innocent parties. In Robertson v. Snider, Mo. App., 63 S.W.2d 508, 509, the court said:

"The statute upon which those decisions are based is drastic, mandatory, and intended as a police regulation in the interest of the public welfare to prevent traffic in stolen automobiles. There are many instances where it has and will continue to work a hardship upon innocent dealers and sellers of such vehicles. But under the law as written there can be no exceptions in favor of those not intentionally guilty of wrong doing."

Referring to State ex rel. Conn. Fire Ins. Co. of Hartford, Conn. v. Cox, supra, in Kusnetzky v. Security Ins. Co., 313 Mo. 143, 281 S.W. 47, 51, 45 A.L.R. 189, the Missouri Supreme Court pointed out that it had *not* held in the Cox case that Howell did not have such a claim to the automobile as would have entitled him to enforce the transfer of a legal statutory title to him, but that the Cox case held that such claim had not "ripened into a title" by reason of failure to comply with the statute.

In Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975, Pearl, a used car dealer, purchased two used cars and obtained *unacknowledged* certificates of title to them from their owners. He resold the cars to Security Motor Company and delivered the unacknowledged certificates to Security, accepting Security's check in payment. Security mortgaged the cars to Interstate. Security's check to Pearl was no good. Security defaulted on the mortgage to Interstate. Interstate foreclosed and obtained a new certificate of ownership based on foreclosure. Pearl recovered the cars from Interstate, the Supreme Court holding that since the certificates delivered by Pearl to Security were unacknowledged they conveyed no title to Security which could be mortgaged. The mortgage Security gave to Interstate was therefore invalid and Interstate got no title by the foreclosure of the mortgage. The court pointed out that what was required to vest title in Security was both a completion of the assignments (by acknowledgment) so as to vest title in [Pearl] and a reassignment[2] of the certificates to Security. Since neither was done, Security got no title that it could mortgage and therefore could not give Interstate any lien by the mortgage. So it is in this case. Mackie got the title to the vehicles when the Arkansas certificates were delivered to him.[3] Crawford v. General Exchange Ins. Corp., Mo. App., 119 S.W.2d 458. But that title did not ripen into one which could be transferred to Mackie and Williams in Missouri until and unless Mackie complied with the Missouri statute and procured a certificate of ownership by which he could convey title, and assigned that title to Mackie and Williams. Hence, Mackie and Williams obtained no insurable interest by the delivery to it of the Farrar Arkansas certificate.

Reverting to the argument made on behalf of Mackie and Williams that paragraph 4 of § 301.210 does not apply because the vehicles were not "registered under the laws of" Missouri, it should be clear from what has been said that even if paragraph 4 does not prohibit the sale in Missouri by a Missouri vendor to

2. Reassignments are permitted by registered dealers in Missouri. Mackie was not a registered dealer.

3. The fact that the assignment of those certificates was in blank we ignore for present purposes. That defect, if it was one under Arkansas law, could probably have been cured by Mackie. See Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975, 978.

a Missouri vendee of a motor vehicle registered in another state until and unless a certificate of ownership shall pass between the parties, Mackie had not perfected his title to the vehicles to such an extent that he could make a valid conveyance of an insurable interest therein to Mackie and Williams.

One further authority requires consideration. The trial court cited and relied upon Craig v. Rueseler Motor Co., Mo.App., 159 S.W.2d 374. The appellee insurance company relies upon it. Counsel for Mackie and Williams is of the opinion that the portion of that opinion relied upon by the trial court was obiter dictum, defined by the late Judge Vandeventer, speaking for the Supreme Court of Missouri, in Muench v. South Side National Bank, 251 S.W.2d 1, 6, as " 'An obiter dictum, in the language of the law, is a gratuitous opinion—an individual impertinence—which, whether it be wise or foolish, right or wrong, bindeth none, not even the lips that utter it.' Hart v. Stribling, 25 Fla. 433, 435, 6 So. 455." In that case Craig sued an automobile sales company for breach of the latter's contract in failing to carry out a trade Craig claimed to have made by which Craig traded a Ford truck for defendant's Chevrolet truck. Craig claimed that he had performed his part of the contract. Craig and defendant were both domiciled at Cape Girardeau, Missouri. At the time of the transaction Craig delivered to the defendant the Ford and an Illinois certificate of title issued to him. He assigned the certificate. It was not notarized or dated and recited that the vehicle was free and clear of encumbrance. There was a $700.00 mortgage on the truck and the assigned certificate contained a different motor number than the Ford Craig delivered. The defendant refused to deliver the Chevrolet and go forward with the trade. Craig obtained a judgment for damages. In reversing that judgment the court held that Craig had failed to perform his part of the agreement by failing to deliver a certificate of title properly describing the Ford and properly showing the indebtedness on it. The court went on, however, (and this is what is said to be obiter dictum) and, setting out the provisions of § 8382 RSMo 1939, now paragraph 4 of § 301.210, supra, held that the certificate referred to in paragraph 4 was "of course a certificate [of title] issued in this state, not a certificate issued in another state." [159 S.W.2d 378.] Craig's failure to deliver a missouri certificate of ownership was given as an additional reason why he had not performed the contract and could not recover.

If Craig had been a citizen of Illinois and had delivered a proper Illinois certificate to the Cape Girardeau automobile dealer, properly assigned and acknowledged, the conclusion stated by the court that the Missouri statute (paragraph 4) required a delivery of a Missouri certificate to convey the title would appear to be in conflict with Crawford v. General Exchange Ins. Corp., Mo.App., 119 S.W.2d 458. But those facts were not present. The court pointed out that Craig was at the time of the transaction a resident of Missouri, the Ford was in Missouri, the transaction was consummated in Missouri, the buyer was located in Missouri. We understand the language of the opinion to mean that under those circumstances the Missouri statute required that Craig have a Missouri certificate of ownership to the Ford and could not evade the necessity of delivering a Missouri certificate by showing that he had no such certificate. When so understood, the Craig case is authority for the trial court's judgment. Applied to this case, the effect of the Craig case is that Mackie, being a resident and citizen of Missouri, and the vehicles involved being in Missouri, should have converted the Arkansas Farrar certificates of title into Missouri certificates issued in Mackie's name in order to be able to convey a good title to Mackie and Williams, also domiciled in Missouri.

For the reasons stated, the judgment is affirmed.