Margie Kay HALL, Ronald Lee Hall, Donald LeRoy Hall, and Thelma Wilcutt, Appellants,

v.

Joyce Powell WESTON, and Farm Bureau Mutual Insurance Company of Missouri, a Corporation, Garnishee-Respondents.

No. 46932.

Supreme Court of Missouri,

Division No. 1.

April 15, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied May 11, 1959.

674

Bloodworth & Bloodworth, Poplar Bluff, for appellant.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondents.

COIL, Commissioner.

In this garnishment proceeding instituted by plaintiffs below in an attempt to collect from insurer judgments theretofore rendered in their respective actions for dam-

ages, the trial court at the close of plaintiffs' evidence directed a verdict for insurer-garnishee and plaintiffs have appealed from the ensuing judgment.

On October 10, 1955, Joyce Weston drove a 1955 GMC tractor with a 1948 Fruehauf semitrailer attached, both owned by Carter Fogle, into collision with an automobile operated by Roy Wilcutt in which Patsy Hall was a passenger. The collision resulted in the deaths of Wilcutt and his passenger, Mrs. Hall. Mrs. Hall's minor children, through a next friend, and the widow of Roy Wilcutt, brought separate actions for damages for wrongful death. Both actions named Weston and Fogle, the driver and owner, as defendants. The cases were consolidated for trial and a jury waived. On September 19, 1957, the trial court entered a judgment in each case for $10,000 against Weston and a judgment in favor of defendant Fogle. After executions had been returned unsatisfied, these garnishment proceedings were instituted against insurer, Farm Bureau Mutual Insurance Company of Missouri, a corporation (hereinafter sometimes called Farm Bureau), as garnishee and interrogatories, answers thereto, and plaintiffs' reply were filed. The garnishments were treated as though they had been consolidated and the parties proceeded to trial with the result stated above.

It is agreed that on April 20, 1953, Farm Bureau issued its policy to Carter Fogle covering his 1952 GMC cab and chassis and 1947 Nabors trailer and that that policy was in full force and effect on October 10, 1955, the accident date. It is also undisputed that Weston, Fogle's driver, was at the time of the accident operating a 1955 GMC tractor (cab and chassis) pulling a 1948 Fruehauf trailer. It apparently is also undisputed that Farm Bureau was immediately aware of the accident.

The meritorious issue was and is whether under the applicable law, in the light of the provisions of the instant insurance policy and under the evidence adduced by

plaintiffs, there was a jury question as to whether the tractor and trailer being operated at accident time were covered by the policy in question.

Plaintiffs' theory was and is that on August 10, 1955, Carter Fogle, insured, notified Farm Bureau through its agent that he had acquired the 1955 tractor and the 1948 trailer to replace the 1952 tractor and the 1947 trailer, and that as a result of such notice, the policy, by its terms, covered the newly acquired tractor and trailer.

The trial court directed a verdict for garnishee on the stated grounds: that plaintiffs' proof was insufficient to constitute a prima facie showing that John Barth, Farm Bureau's agent whom insured said he notified, was an agent with authority to "bind the Farm Bureau Mutual Insurance Company of Missouri," and that plaintiffs' evidence failed to show that insured had an insurable interest in the 1948 Fruehauf trailer.

For the reasons which will appear we hold that the trial court erred in directing a verdict for garnishee.

The pertinent provisions of the insurance policy admittedly issued to Carter Fogle by Farm Bureau and admittedly in force on the accident date are decisively important. Under that policy, Farm Bureau agreed to pay (within stated limits) the sums of money which insured became obligated to pay by reason of liability imposed upon him for damages because of bodily injury including death caused by accident arising out of the ownership or use of the "automobile." The "insured" included, in addition to the named insured, any person using the "automobile" with named insured's permission. Policy provisions with respect to the definition of "automobile" were:

"IV. Automobile Defined, Trailers, Two or More Automobiles. Except where stated to the contrary, the word 'automobile' means:

"(1) Described Automobile—the motor vehicle or trailer described in the declarations; * * *

"(5) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured, owner of the described automobile, if he notifies company within 30 days following its delivery date. * * *

"When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability under Coverages A and B and separate automobiles as respects limits of liability, under Coverages D, E and E–1.

"The named insured shall pay any additional charge required because of application of insurance to such other automobile. Insurance terminates on a replaced automobile on delivery date of the replacing automobile."

The "declarations" mentioned in (1) above described the vehicle insured as a 2-ton 1952 GMC cab and chassis and appearing also on the face of the "declarations" were the "typed in" words, "Tow Trailer endorsement." And attached to the paper titled "declarations" was a paper titled "Tow Trailer Endorsement" describing the 1947 Nabors trailer. The endorsement was an integral part of the policy and thus the policy as written insured the 1952 chassis and the 1947 trailer.

■ Construing the foregoing provisions as a part of the whole policy and where open to different constructions favorably to insured but reasonably, Aetna Life Ins. Co. of Hartford v. Durwood, Mo., 278 S.W.2d 782, 786 [2, 3], it is clear that under the terms of Section IV the "Described Automobile" in the "declarations" was the 1952 GMC tractor *and* the 1947 Nabors trailer. It is true that the 1947

trailer was described in the "tow trailer endorsement" which was attached to the "declarations," but it is equally true that the "tow trailer endorsement" became and was a part of the "declarations" by reference by reason of the language "Tow Trailer endorsement" appearing on the face of the "declarations." That such must have been the intention of insurer is emphasized when it is considered that the amount of the premium (itemized on the face of the "declarations") did not include any separate charge for insuring the trailer, i. e., the total premium was for a 1952 cab and chassis which included the charge for the trailer as a part of the insured unit. And, of course, it is apparent that the premium on a tractor (a cab and chassis) would normally include the charge for a trailer or trailers to be pulled by that tractor for usually such tractors are not operated on the highways unattached to trailers. We have no doubt, and therefore hold, that the "automobile" described in the "declarations" was the unit consisting of the 1952 tractor and the 1947 trailer, and, thus, that such unit was the "automobile" described in the policy.

■ It is also clear to us that under IV(5) above the "automobile" covered by the policy included a "newly acquired automobile," which, as defined in the policy, was an automobile acquired by the owner of the "automobile" described in the original policy if the insured owner notified the "company" within 30 days following the delivery date of such "newly acquired automobile." The only duty on insured in that respect was to notify the company within 30 days after acquisition and if he did so the "newly acquired automobile" (which had been covered for 29 days without any action on insured's part) became an "automobile" as defined in the policy and the same insurance remained in force and covered the "newly acquired automobile" until further action by the company. We observe that under the provisions of IV(5) above quoted, the policy provision requiring notice to the company of a "newly

acquired automobile" within 30 days following acquisition thereof by insured was obviously only a device by which the company was to obtain information upon which it might thereafter act in the way it might choose; and such a provision should be distinguished from provisions often in policies which require notice and a prescribed action based thereon conditional to continuation of or transfer of insurance, e. g., the acceptance by insurer of a different vehicle and issuance of a document effecting new or transferred insurance. Here, however, the insurance contract continued on "newly acquired automobiles" until the company acted upon the information it had received—no action was prescribed. We assume, e. g., the company might as a condition to continuing the insurance, charge an additional premium, it might cancel the insurance if permitted under policy terms, or it might make other provisions with respect to the continuation of insurance on the "newly acquired" vehicles.

Presently most important, however, is the fact that insured had fulfilled his only duty under the terms of the policy when he had notified the company within 30 days after he acquired a new "automobile" of the fact of his acquisition. And we note further that "newly acquired automobile" under IV(5) apparently meant not only one that might replace the unit described in the "declarations" but included also an additional "automobile," i. e., a unit in addition to the one described in the "declarations." Such seems correct when the language of the last paragraph under (5) above is considered: "The named insured shall pay any additional charge required because of application of insurance to such *other* automobile. Insurance terminates on a *replaced* automobile on delivery date of the *replacing automobile*." (Our italics.)

■ It is our view, therefore, that if insured notified the "company" within 30 days of the date of acquisition that he had acquired a 1955 tractor and a 1948 trailer which he wanted covered he had complied

with the terms of the policy in that respect and his 1955 tractor and 1948 trailer were covered on the accident date. Under that view the policy exclusion relied on by garnishee is inapplicable. That exclusion was: "(b) under Coverages A or B, while (1) any automobile is used for towing any trailer owned or hired by the insured and not covered by like insurance in the Company; or (2) while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the Company." As we understand that language, if a trailer owned by insured not covered by liability insurance issued by Farm Bureau was pulled by insured's "automobile," then during the time the uninsured trailer was being pulled, the insurance on insured's automobile did not apply, and vice versa. As noted, however, the exclusion relied on is inapplicable because, as will appear, Fogle's "newly acquired automobile," of which he claimed to have notified the company, included a tractor and trailer, i. e., the same type of unit that was described in the "declarations," and, if so, both the tractor and trailer were insured. Respondent's case relied on, American Indemnity Co. v. Carney, D.C.E.D.Mo., 54 F.Supp. 273, holding that an exclusion clause like (b) above is valid and is enforceable when there are facts (not present in the instant case) which call for its application, is not pertinent.

Thus, the question on this aspect of the case resolves itself into whether plaintiffs adduced substantial evidence that insured notified the "company within 30 days following delivery" of the "newly acquired automobile."

■ We state plaintiffs' pertinent evidence from a standpoint favorable to them and we give them the benefit of all reasonable favorable inferences. Carter Fogle testified he operated a seed store and trucking business in Doniphan, Missouri, and that he had been covered by various policies of insurance issued by Farm Bureau since 1948; that on August 10, 1955 (two months prior to the accident), he purchased and received delivery of a new 1955 2½-ton GMC tractor and "traded in" his 1952 GMC tractor as part of the purchase price; that on that same day, or perhaps shortly prior thereto, he purchased a 1948 Fruehauf trailer, unused by him prior to August 10, 1955, the reasonable inference being that he purchased the 1948 trailer as part of a unit which he was thereafter to use consisting of the 1955 tractor and the 1948 trailer. In any event, Fogle testified further that he "retired" the 1947 Nabors trailer on August 10, 1955, and did not use it thereafter; that he parked it behind the courthouse where it remained for a couple of months. Its final disposition was not shown. Mr. Fogle testified further that on August 10, 1955, John Barth was the Farm Bureau Mutual Insurance Company agent in Doniphan; that on that date he notified Mr. Barth by telephone that he had acquired the 1955 tractor and 1948 trailer and advised Mr. Barth of his desire that his insurance cover the (newly acquired) 1955 truck and 1948 Fruehauf trailer; that he informed Mr. Barth that he wanted to drive the unit to St. Louis that same night and that Mr. Barth replied that it was all right to go ahead and drive, that he, Barth, would take care of everything and would bring papers for Fogle to sign in a few days. Mr. Fogle also said he had theretofore transferred insurance issued by Farm Bureau Mutual Insurance Company of Missouri from one unit to another by telephone communication with the Farm Bureau agent at Doniphan; he thought he had so dealt since Mr. Barth had been agent but was not sure enough to positively so state. A reasonable inference from his testimony was, however, that Farm Bureau agents who formerly filled the same position that Mr. Barth occupied in 1955 and who presumably were the same type agents had been notified of circumstances calling for action by the company with respect to insurance on "newly acquired" vehicles and that the company had theretofore acted upon the notice given such agent.

■ The "company" wrote the policy. It easily could have specified how and where and in what manner and by what method an insured was to notify the "company within 30 days following" the delivery of a "newly acquired automobile." Insurer did not do so. It chose to provide only that insured was to notify the "company." The most reasonable construction of that broad, general language, and it seems a compelled construction if the policy is construed favorably to insured, is that any notice reasonably calculated to reach insurer would comply with that notice requirement.

■ We have no doubt that if the jury found that Barth was the Farm Bureau agent at Doniphan on August 10, 1955, and that the insured notified Barth by telephone of the fact that insured had a newly acquired tractor and trailer which he wanted covered by the policy, insured fully complied with the notice provision. That is because we are convinced that insured was justified in believing that a notice so given would reach the proper department or person (whatever department or person that might be and, obviously, which department or what person was the correct one was certainly unknown to insured). If insured had written Farm Bureau Mutual Insurance Company of Missouri, in care of Mr. Barth at Doniphan, and had stated the same information he gave to Mr. Barth on the telephone, certainly insured thereby would have notified the "company" in compliance with the policy requirement. That is because there was no suggestion that insured had any information which should have caused him reasonably to believe that the "company," in so far as any matter pertaining to him and his policy was concerned, could be better or more properly addressed than at Doniphan, the place where he had dealt with the "company." The fact that the information was telephoned rather than written to Mr. Barth is unimportant. It was reasonable to believe that it was likely that the telephoned information would reach whoever it should reach just as a letter would be forwarded if it should go to some other place. Under the policy language no duty was on insured to see that the notice reached the "company" at any particular place or that it reached any particular department or person.

Contrary to respondent-insurer's view, there is no question here of the authority of a particular agent to bind an insurer to an oral contract of insurance or of the authority of a certain agent to change or vary the terms of a written contract of insurance, such as were the questions in Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, relied on by respondent. Likewise there is no question here involving the authority of an agent to effect temporary insurance on behalf of the company or of whether an insurer waived a policy requirement or was estopped by reason of the knowledge of or assertions by one of its agents, and the question here is not whether an agent had authority to countersign a change of car endorsement. We note further that we are not here concerned with notice to an agent of an insured's desire to have insurance transferred to a new vehicle, where the policy requires an acceptance and the issuance of a document effecting such a change. The instant policy, as we have noted, continued in full force and effect upon notice within 30 days, just as it had continued automatically for 29 days, on a "newly acquired automobile." In brief, there is no question here which has to do with the real or apparent authority of an agent or with whether an agent's acts were within the scope of such authority. The question is simply whether the notice insured gave complied with the policy requirement to notify the "company."

As we have noted, the trial court directed a verdict on the additional ground that insured had no insurable interest in the Fruehauf trailer. To sustain that action respondent relies on our recent case of Kelso v. Kelso, Mo., 306 S.W.2d 534. The court there stated the proposition that one who

acquires an automobile without obtaining an assignment of the certificate of ownership from the holder thereof in compliance with the provisions of Section 301.210 RS Mo 1949, V.A.M.S., acquires no title and has no insurable interest in the vehicle. 306 S.W.2d 538[5]. Thus, argues respondent, plaintiffs had the burden to prove that the owner-insured, Fogle, had acquired a certificate of ownership properly assigned in accordance with the provisions of the statute, supra.

In the Kelso case the policy contained a declaration that the described automobile was fully owned by the insured. The insurer contended that the policy did not cover because the automobile was not fully owned by named insured but was owned by him and his brother, the plaintiff. We do not regard the statement in the Kelso case that plaintiff had acquired no insurable interest because he had not obtained any title to the automobile as necessary to that decision. In any event, however, the cases cited in the Kelso case to support the proposition that one who does not acquire title to an automobile in accordance with the provisions of Section 301.210 has no insurable interest therein were cases involving damage to or loss of an automobile by fire. The cited cases were, State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456, and Mackie and Williams Food Stores v. Anchor Casualty Co., 8 Cir., 216 F.2d 317, both fire loss cases. The Kelso case should not be considered authority for the proposition that a named insured needs to have an insurable interest in an automobile in order to be covered by a policy insuring him against liability rather than against loss. And we think it is apparent that if the policy, as in the Kelso case, supra, contained a declaration that the automobile described was fully owned by the named insured, the question of whether that policy provision had been complied with, would not involve any question of insurable interest.

There is, of course, a vast difference between a contract of insurance against loss and one against liability. In the instant case the contract of insurance provided only the coverages denominated in the policy as coverages A, B, and C. Those were agreements to pay on behalf of insured sums insured became liable to pay on account of bodily injuries and property damage arising out of the ownership, maintenance or use of the automobile, and to pay reasonable medical expenses incurred by anyone injured while riding in the automobile while it was being used by named insured or with his permission. While the instant *policy form* contained provisions under paragraph 1.D for comprehensive coverage, i. e., fire, theft, etc., that coverage was not an insuring agreement in the policy issued to the insured.

We need not determine whether, under an automobile policy insuring against liability and also insuring against loss under a comprehensive coverage agreement, proof is required that named insured had an insurable interest in the vehicle to recover *either* for loss or to be indemnified against liability, or whether proof of an insurable interest would be necessary only to recover under the loss provisions. See, Bettinger v. Northwestern Nat. Cas. Co., 8 Cir., 213 F.2d. 200, 206 [7].

Our present holding is limited to the instant situation, viz., one wherein a policy of automobile liability insurance insures only against liability for damages by reason of bodily injury and property damage arising out of the ownership, maintenance, or *use* of the automobile, and for medical payments, and further provides, as does the instant policy, that "insured" includes the named insured and any person using the automobile with his permission. We hold in the described situation that proof that an automobile was owned by named insured or that he had an insurable interest therein is not necessary. Ownership under those circumstances is irrelevant on the question of liability. **Ohio Farmers Ins.**

Co. v. Lantz, 7 Cir., 246 F.2d 182; Truck Insurance Exchange v. Hanson, 42 Wash. 2d 256, 254 P.2d 494, 495 [3]; 6 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., § 3873, p. 537. "An insurable interest in property covered by liability insurance is not required, since risk insured against is not based on ownership of property, but loss and injury caused by its use for which insured might be liable." Appleman, Insurance Law and Practice, Vol. 7, 1959 Pocket Part, § 4253, p. 6. Again we note that we are not considering a policy containing a declaration that named insured fully owns the described vehicle.

Respondent's contention that "plaintiffs' pleadings did not state a claim for relief against garnishee" is without merit when asserted, as here, without prior attack and after the parties have treated the pleadings, which included a copy of the insurance policy in question, as sufficiently raising the ultimate issue as to whether insurer was liable to pay plaintiffs' judgments under its insurance policy issued to Carter Fogle and as sufficiently raising the specific issue of whether the policy covered because of the notice to insurer's agent. See Kiernan v. Robertson, 116 Mo.App. 56, 92 S.W. 138; Taylor v. Dollins, 205 Mo.App. 246, 250, 222 S.W. 1040, 1041 [3].

The view we have taken of this case makes it unnecessary to consider other matters briefed by the parties.

The judgment is reversed and the case remanded for a new trial.

VAN OSDOL, C., concurs.

HOLMAN, C., absent.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.